**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANTONIA DOUGLASS and ELIZABETH EVERETT, ) ) | |
| Plaintiffs, ) | CIVIL ACTION |
| v. ) ) | No. 20-2076-KHV |
| GARDEN CITY COMMUNITY ) COLLEGE, et al., ) ) | |
| Defendants. ) _____) | |

**MEMORANDUM AND ORDER**

On September 16, 2020, Antonia Douglass and Elizabeth Everett filed an amended complaint against Garden City Community College ("GCCC"), Herbert J. Swender, Rodney Dozier, Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez, Teri Worf, Brice Knapp, Freddie Strawder and Garden City, Kansas through its police department. Plaintiffs allege retaliation under Title IX, 20 U.S.C. § 1681 et seq., and violations of federal civil rights under the First, Fourth, Fifth and Fourteenth Amendments, U.S. Const. amends. I, IV, V, XIV, and 42 U.S.C. § 1983. First Amended Complaint (Doc. #34). This matter is before the Court on the Motion To Dismiss Elizabeth Everett's Claim (Partial) By Defendants Jeff Crist, Merilyn Douglass, Rodney Dozier, Garden City Community College, Brice Knapp, Steve Martinez, Herbert J. Swender, Blake Wasinger, Teri Worf (Doc. #44) filed October 14, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court overrules in part and sustains in part defendants' motion.

**Legal Standard**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an

entitlement of relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  The Court need not accept as true those allegations which state only legal conclusions.  See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id.  (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  The Court accepts well-pleaded allegations as true and views them in

the light most favorable to the non-moving party.  Sutton v. Utah State Sch. For Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

## Factual Background

Plaintiffs' amended complaint alleges the following:

In 2018, Elizabeth Everett was a student at GCCC and a freshman member of the cheer squad.  First Amended Complaint (Doc. #34), ¶¶ 7, 37.  Everett recently had made informal reports that (1) from the fall of 2017 through the spring of 2018, her cheer coach Brice Knapp had sexually harassed her and (2) in February of 2018, a fellow cheer squad member Henry Arenas blackmailed her and demanded that she perform sexual acts with him or he would publicly release a compromising party picture of her.  Id., ¶¶ 39, 43.  Coach Knapp had been the subject of several prior sexual harassment complaints involving cheer women, and GCCC's Athletic Director ("AD") John Green knew about these complaints.  Id., ¶ 43.

On or about Friday, February 23, 2018, after normal business hours, AD Green called Everett into his office for an impromptu meeting.  Id., ¶¶ 36–37.  Everett did not know the purpose of the meeting and showed up alone.  Id., ¶¶ 37, 44.  When Everett entered the meeting, AD Green, Coach Knapp and Arenas confronted her, "literally and figuratively" cornering her, and tried to convince her that her informal reports were wrong because none of their actions were "offensive, inappropriate or amounted to sexual harassment."  Id., ¶¶ 40, 43.  Everett realized that the meeting was an "unsanctioned Title IX hearing" and a preemptive measure to tamp down her informal reports.  Id., ¶¶ 39, 44.  Everett believed that AD Green, Coach Knapp and Arenas intended the meeting to be "a deterrent or warning to women in athletics or women in general on campus [to] not question male authority or raise claims of sexual harassment because they will not be well-received."  Id., ¶ 45.  GCCC's Title IX coordinator was not present during the meeting.  Id., ¶ 43.

Feeling intimidated, Everett texted Antonia Douglass, a host mom for GCCC student athletes, for help. Id., ¶¶ 7, 40. Douglass arrived on campus and went to AD Green's office. Id., ¶ 48. The assistant AD met her outside of AD Green's door. Id. Douglass explained that Everett had sent her an urgent text message and asked her to come to the meeting. Id. The assistant AD stalled for time and refused to move from blocking the entrance. Id. Douglass grew increasingly concerned and finally told the assistant AD "to step aside or she would call law enforcement based on Everett's plea, because something was wrong." Id., ¶ 50. When Douglass entered the office, she found Everett curled up in a chair in the corner, cowering in fear and surrounded by AD Green, Coach Knapp and Arenas. Id., ¶ 51. Everett was relieved to see Douglass and left with her shortly thereafter. Id., ¶ 52.

After the meeting, Douglass encouraged Everett to tell Everett's mother about the cheer squad's sexual harassment issues. Id., ¶¶ 56–59. When Everett told her mother, her mother recalled that in the summer of 2017, Blake Wasinger—a member of the GCCC Board of Trustees ("the Board") and a doctor who performed physicals for GCCC student athletes—told her to "be careful about the cheer coach and [her] daughter's participation in cheer." Id., ¶¶ 59, 60. Trustee Wasinger's comment especially concerned Everett's mother because at the time, Everett was 17. Id. Everett's mother had approached Coach Knapp about the odd comment, but he assured her that he would watch out for her daughter. Id., ¶ 60. Everett's mother now believed that Trustee Wasinger's comment was about Coach Knapp himself, and his prior sexual harassment issues. Id., ¶ 62.

The Everetts trusted that Board members would take action and address the multiple Title IX claims brought against Coach Knapp. Id., ¶¶ 66–74. On April 10, 2018, at a Board meeting, Everett's mother spoke during the public comment portion, but the Board was

-4-

unreceptive and indifferent.  Id., ¶¶ 84–88.  The Board also refused to reopen the public comment portion of the meeting for a female cheer student who wanted to comment on the cheer squad sexual harassment situation.  Id., ¶¶ 84–85.  At some point, the local newspaper publicized stories about the cheer scandal, and GCCC eventually severed ties with Coach Knapp.  Id., ¶¶ 93, 105.

GCCC and the Board, however, started to retaliate against Everett for bringing her Title IX complaint.  Id., ¶ 104.  In particular, on or about May 9 or 10, 2018, someone called the Garden City Police Department ("GCPD") and reported that in a text exchange, Everett had made a criminal threat against a peer.  Id., ¶¶ 165–67.  On May 10, the GCPD arrested Everett for making a criminal threat and causing terror, evacuation or disruption.  Id., ¶ 165.  She stayed in jail overnight, and unknown individuals with access to the jail brought Everett's accuser through the jail, where the peer taunted her from outside her cell.  Id., ¶¶ 171–72.  Detective Freddie Strawder, a GCPD employee and an adjunct criminal justice instructor at GCCC, admitted in his official police report that the GCPD lacked probable cause to arrest Everett for her text.  Id., ¶¶ 160, 163.  Everett believes that Detective Strawder told the peer what to text her in order to coax her into allegedly making a criminal threat.  Id., ¶¶ 164–67.  She also believes that GCCC President Herbert Swender, with the support of the Trustees and the GCCC Campus Chief of Police Rodney Dozier, directed someone at GCCC to call Detective Strawder to report the text.  Id.

Meanwhile, in the summer of 2018, the Board hired an independent investigator to look into the cheer squad scandal and related Title IX allegations.  Id., ¶ 80.  In January of 2019, the Board voted to approve the report even though it contained misstatements of fact and fraudulent findings.  Id., ¶¶ 80–81.  After the Title IX allegations came to light, Everett was denied educational opportunities because she could not participate in extracurricular activities; lost friends and was

held up to public contempt and ridicule; and suffered extreme emotional distress that affected her grades and overall wellness.  Id., ¶ 179.

**Analysis**

Everett sues GCCC, GCCC's former President Swender, several members of the GCCC Board of Trustees, Coach Knapp, GCCC Campus Chief of Police Dozier, Detective Strawder and Garden City, Kansas through the GCPD.  She alleges the following claims: (1) Title IX retaliation and hostile education environment by GCCC in violation of 20 U.S.C. § 1681 et seq.; (2) false arrest and malicious prosecution under the Fourth and Fourteenth Amendments, U.S. Const. amends. IV, XIV, and 42 U.S.C. § 1983 by Detective Strawder in his individual and official capacities and Garden City, Kansas through the GCPD under Monell v. Department of Social Services, 436 U.S. 658 (1978); (3) conspiracy to interfere with civil rights under 42 U.S.C. § 1983 by individual defendants in their individual and official capacities, and GCCC under Monell; (4) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2) by Trustees Wasinger and Douglass in their individual capacities; and (5) an Equal Protection violation under 42 U.S.C. § 1983 by Coach Knapp in his individual and official capacities.[1]

GCCC, President Swender, Chief Dozier, Coach Knapp and Trustees Crist, Douglass, Martinez, Wasinger and Worf move to dismiss the following claims for failure to state a claim: (1) Section 1983 conspiracy claims against GCCC and the individual defendants in their individual and official capacities; (2) Section 1985(2) conspiracy claims against Trustees Wasinger and Douglass in their individual capacities; and (3) the Equal Protection claim against Coach Knapp in his official capacity.  In the alternative, they move to dismiss as redundant plaintiff's official

---

[1] Plaintiff voluntarily dismissed without prejudice the Section 1985(3) claim for conspiracy, numbered in the amended complaint as Count VII.  Memorandum In Opposition By Plaintiff Elizabeth Everett (Doc. #65) at 7 n.5.

-7-

capacity claims against individual defendants and to dismiss under qualified immunity plaintiff's Section 1983 and Section 1985(2) conspiracy claims against individual defendants. See, e.g., N.E.L. v. Douglas Cty., Colo., 740 F. App'x 920, 928 (10th Cir. 2018) (detailing threshold to overcome qualified immunity).

Defendants generally argue that (1) plaintiff has failed to sufficiently plead facts to support her claims and (2) the documents that plaintiff "incorporated by reference" but did not include in her amended complaint demonstrate that plaintiff is misstating alleged facts. Specifically, in her amended complaint, plaintiff "incorporates by reference" online public videos of the Board of Trustees' meetings but does not attach them as exhibits. See, e.g., First Amended Complaint (Doc. #34), ¶¶ 87, 370. On a motion to dismiss, the Court cannot legally consider extrinsic evidence outside the complaint. See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (court must exclude outside material unless motion converted to one for summary judgment under Rule 56). Further, while the Court may take judicial notice of matters in the public record such as the Board's public meetings videos, such notice is limited to the document's existence, not its accuracy. More to the point, under Rule 8(a), Fed. R. Civ. P., a pleading that states a claim for relief must contain a "short and plain statement of the claim." Evaluated against that standard, the purported "incorporations by reference" are surplusage, immaterial and impertinent. Accordingly, under Rule 12(f)(1), Fed. R. Civ. P., the Court strikes these references from plaintiff's amended complaint and does not consider them in deciding defendants' motion to dismiss.

The Court now will consider each claim in turn.

**I.      Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1983**

Plaintiff alleges that in violation of 42 U.S.C. § 1983, defendants conspired to deter her from speaking about Title IX issues on the GCCC campus by (1) orchestrating her false arrest on May 10, 2018, and (2) endorsing comments by Trustees Wasinger and Douglass at Board meetings on June 9 and June 25, 2020 that blamed lawsuits like plaintiff's for harming GCCC. First Amended Complaint (Doc. #34), ¶¶ 399, 418, 420. She alleges that the false arrest and comments caused psychological injury, emotional distress, reputational harm, bodily harm and economic harm because she had to pay for court costs, bond and criminal attorney's fees. Id., ¶¶ 418–19. She also alleges that defendants' actions intimidated her from testifying in court about the Title IX allegations. Id., ¶ 420. As noted, plaintiff brings this claim against (1) the individual defendants in their individual and official capacities and (2) GCCC directly under Monell.

Defendants seek to dismiss this claim on the following grounds: (1) plaintiff did not sufficiently plead facts identifying the specific dates, conversations, contacts or other details which would tend to show any agreement or concerted action among defendants; (2) the conspiracy claim against GCCC is redundant and should be dismissed because plaintiff named GCCC Trustees as defendants; (3) the individual defendants are entitled to qualified immunity because the law is not clearly established in this district; and (4) plaintiff's official capacity claims against the individual defendants are redundant. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 9–14. The Court considers each argument in turn.

**A.      Section 1983 Allegations**

To succeed on a conspiracy claim under Section 1983, plaintiff must allege (1) specific facts that show an agreement and concerted action among defendants and (2) an actual deprivation of a constitutional right. Maier v. Kansas, No. 16-3219-SAC, 2017 WL 552629, at *3 (D. Kan.

Feb. 10, 2017). Plaintiff must allege facts that manifest a "specific goal to violate [plaintiff's] constitutional rights by engaging in a particular course of action." Bledsoe v. Jefferson Cnty., 275 F. Supp. 3d 1240, 1252 (D. Kan. 2017). Because direct evidence of an agreement to join a conspiracy is rare, the Court can infer assent "from acts furthering the conspiracy's purpose." Id. The Court decides on a case-by-case basis whether plaintiff has alleged sufficient facts to support a conspiracy claim. Id.

Defendants argue that plaintiff's allegations "are nothing more than a collated package of conclusory allegations with no basis in fact" and that plaintiff identifies "no other facts to support a conspiracy from the other defendants other than a collection of paragraphs that contain nothing more than speculation." Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 9–10. Defendants also argue that plaintiff does not identify any specific dates, conversations, contacts or other details which would tend to show an agreement or concerted action among the defendants, in particular GCCC, the Trustees and Coach Knapp. Id. at 9.

The Court disagrees. In the context of a motion to dismiss, plaintiff must put defendants on notice of her claims, not plead all of her evidence. See Fed. R. Civ. P. 8(a); see also Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993) (requiring complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief"). Assuming as true plaintiff's well-pleaded factual allegations, plaintiff sufficiently pleads facts which create an inference that (1) on or around May 10, 2018, Detective Strawder, President Swender and other employees at GCCC had a meeting of the minds to orchestrate plaintiff's arrest in response to her Title IX allegations; (2) GCCC employees and the Trustees endorsed their behavior by accepting the flawed independent investigator's report and publicly shaming her at Board meetings; and (3) plaintiff's First Amendment rights of speech and

association were violated as they intimidated, harassed and silenced her for reporting Title IX concerns.[2]  First Amended Complaint (Doc. #34), ¶¶ 66–73, 80–83, 118, 123, 153, 162, 179, 278, 399–400, 418.  The Court overrules defendants' motion to dismiss plaintiff's Section 1983 conspiracy claims.

### B.  GCCC's Liability Under Monell

Plaintiff alleges that under Monell, GCCC is liable for constitutional violations by GCCC employees under GCCC custom or policy.  First Amended Complaint (Doc. #34), ¶¶ 383–420; Monell, 436 U.S. at 694.  Local governments or municipalities, including GCCC, can be held liable for their employees' actions if they were taken pursuant to the "official policy" of GCCC.  Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); Monell, 436 U.S. at 694.  To allege liability under Monell and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged.  See Monell, 436 U.S. at 694; Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

Defendants argue that because plaintiff named the Trustees as defendants, plaintiff's claim against GCCC is redundant as GCCC is a municipality that can only act through its employees, officers and trustee members.  Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 10.  Defendants do not cite any case law to support this assertion.  Defendants further argue that plaintiff "pleads no facts indicating how the entity GCCC was involved in the conspiracy" and that plaintiff cannot hold GCCC liable under Monell because the underlying employees committed no constitutional violations.  Id. at 10–11.

---

[2]  Notably, in their motion to dismiss, defendants do not challenge plaintiff's Title IX retaliation claims, which allege First Amendment violations by GCCC.  See generally Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45).

As stated above, plaintiff sufficiently alleges that GCCC's employees—including President Swender, the Trustees, Chief Dozier and Coach Knapp—violated plaintiff's constitutional rights when they conspired against her to deter her from reporting and testifying about Title IX issues by orchestrating her arrest and publicly blaming her for GCCC's financial woes.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 66–73, 80–83, 118, 123, 153, 162, 179, 278, 399–400, 418.  Further, plaintiff alleges that these conspiratorial actions were based on GCCC's Title IX policy or custom to act in concert to silence and intimidate critics, cover up systemic abuse, protect abusers like Coach Knapp and inadequately enforce Title IX.  Id., ¶¶ 64–81.  Because plaintiff has alleged that the conspiratorial conduct of GCCC employees was taken pursuant to GCCC Title IX policy, it may be subject to municipal liability if the underlying conduct violated the Constitution.  The Section 1983 claim against GCCC therefore survives under Monell.

### C. Qualified Immunity

In the alternative, defendants argue that President Swender, Chief Dozier, Coach Knapp and Trustees Crist, Douglass, Martinez, Wasinger and Worf are entitled to qualified immunity on plaintiff's Section 1983 conspiracy claim because (1) plaintiff has not pled a constitutional claim against the individual defendants and (2) no case law "would have put [defendants] on notice it was 'beyond debate' that their actions violated the [C]onstitution."  Defendants' Reply Memorandum (Doc. #85) at 7–8.  To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right.  N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.

For the first factor, as discussed above, plaintiff has sufficiently pled that (1) she was engaged in protected First Amendment activities when she reported the Title IX violations and (2) President Swender, Detective Strawder, the Trustees and other GCCC employees conspired together to orchestrate her arrest, publicly blame her for GCCC's financial woes and deter her from reporting or testifying about her Title IX concerns. First Amended Complaint (Doc. #34), ¶¶ 66–73, 80–83, 118, 123, 153, 162, 179, 278, 399–400, 418.

For the second factor, the law is clear and more than 50 years ago, the Supreme Court set the standard: school authorities may not penalize students for speech which is non-disruptive, non-obscene and not school-sponsored. See Tinker v. Des Moines Ind. Cmty. Sch. Dist., 393 U.S. 503, 508–09 (1969) (school authorities cannot punish students for exercising freedom of expression where speech does not "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" or intrude on rights of other students; "undifferentiated fear or apprehension of disturbance" not enough to overcome right to freedom of expression); cf. Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988) (school authorities can exercise greater control over students' speech when it involves "school-sponsored expressive activities"); Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 685 (1986) (school authorities could penalize student for lewd and indecent speech). The geographical scope of the test clearly encompasses plaintiff's claims. Additionally, the First Amendment establishes the right to testify truthfully at trial, especially where plaintiff has brought forth matters of public concern like a Title IX allegation. See, e.g., Patrick v. Miller, 953 F.2d 1240, 1247–48 (10th Cir. 1992); Melton v. City of Okla. City, 879 F.2d 706, 714 (10th Cir. 1989). A reasonably competent public official would necessarily know that such behavior would deprive plaintiff of First Amendment rights.

Defendants are not entitled to qualified immunity, and defendants' motion to dismiss the Section 1983 conspiracy claim is overruled.

### D.  Official Capacity Claims

Plaintiff asserts the Section 1983 conspiracy claim against President Swender, Chief Dozier, Coach Knapp and the Trustees (Crist, Douglass, Martinez, Wasinger and Worf), in their individual and official capacities.  First Amended Complaint (Doc. #34), ¶ 383–421.  Defendants argue that the official capacity claims are redundant in view of the claim against GCCC. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 5–6.  Plaintiff contends that the official capacity claims are not redundant because their scope of recoverable damages is broader than the scope of recoverable damages against GCCC—namely, punitive damages are not permitted in suits against municipalities but are available against individuals sued in their official capacities.  Memorandum In Opposition By Plaintiff Elizabeth Everett (Doc. #65) at 21–22. Plaintiff relies on Youren v. Tintic School District, 343 F.3d 1296 (10th Cir. 2003), where the Tenth Circuit found sufficient evidence to warrant a trial on punitive damages against an individual defendant in her official capacity.[3]

Courts in this district have routinely dismissed official capacity claims as redundant when the local government or municipality is also a defendant, and have dismissed official capacity claims when plaintiff seeks punitive damages.  See Thouvenell v. City of Pittsburg, Kan., No. 2:18-CV-2113-JAR-KGG, 2018 WL 3068199, at *3 (D. Kan. June 21, 2018); Quintero v. City of Wichita, No. 15-1326-EFM-GEB, 2016 WL 5871883, at *1 (D. Kan. Oct. 7, 2016) (plaintiff had

---

[3]  The Court notes that in Youren, the question was not whether the claims were duplicative, but whether the official capacity damages amounted to "impermissible double recovery."  343 F.3d at 1306.  The defendant also was sued only in her official capacity, not as an individual.  Id.

avenue for punitive damages through individual capacity claim); Smith v. Stuteville, No. 14-2197-JWL, 2014 WL 3557641, at *4 n.1 (D. Kan. July 18, 2014) (individuals sued in official capacities immune from punitive damages).  The Tenth Circuit acknowledges that Youren is "an anomalous outlier" and recognizes that courts within the Tenth Circuit ignore Youren when dismissing official capacity claims under Section 1983.  See, e.g., Cross Continent Dev., LLC v. Town of Akron, Colo., 548 Fed. Appx. 524, 531 (10th Cir. 2013); Thouvenell, 2018 WL 3068199, at *3.  Even if Youren continues to be good law, plaintiff's case is distinguishable because unlike Youren, plaintiff alleges individual capacity claims against all of the individually named defendants.

Because plaintiff brings her Section 1983 conspiracy claim against both GCCC and the individual defendants in their official capacities, plaintiff's official capacity claims against Swender, Dozier, Knapp, Douglass, Wasinger, Crist, Martinez and Worf are duplicative.  The Court therefore dismisses the official capacity claims against these defendants.

## II.     Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1985(2)

Plaintiff alleges that in violation of 42 U.S.C. § 1985(2), Trustees Wasinger and Douglass conspired to speak at Board meetings on June 9 and June 25, 2020.  Plaintiff alleges that at these meetings, Wasinger and Douglass "inferred that anyone who brings civil rights claims or testifies in support of such claims were damaging the College, the students and destroying faculty and staff jobs because those were the consequences of the insurance rate hikes wrought upon the College due directly to the civil rights claims." First Amended Complaint (Doc. #34), ¶ 371.  By sharing these comments with a wide audience, Wasinger and Douglass injured plaintiff's reputation, intimidated her from truthfully testifying and intimidated witnesses from associating with or testifying for plaintiff.  Id., ¶¶ 373–76.  Defendants argue that based on the publicly available videos of Board meetings, Wasinger and Douglass did not appear to conspire and their comments

cannot be considered force, intimidation or threat.  <u>Memorandum In Support Of Defendants' Motion To Dismiss</u> (Doc. #45) at 3–4, 15–16.  In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity.  <u>Id.</u> at 18.  The Court considers each argument in turn.

### A. Section 1985(2) Allegations

The first clause of Section 1985(2) contains a deterrence provision, which "concerns intimidating parties, witnesses, or jurors in court so that they will not attend court or testify." <u>King v. Knoll</u>, 399 F. Supp. 2d 1169, 1179 n.57 (D. Kan. 2005).  The "deterrence" provision of 42 U.S.C. § 1985(2) provides that "[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."  42 U.S.C. § 1985(2). The elements of a deterrence claim under Section 1985(2) are (1) a conspiracy, (2) intent to deter testimony by force or intimidation and (3) injury to plaintiff.  <u>Brever v. Rockwell Int'l Corp.</u>, 40 F.3d 1119, 1126 (10th Cir. 1994).

Defendants challenge plaintiff's allegations regarding the first two elements: (1) conspiracy and (2) intent to deter testimony by force or intimidation.  A conspiracy "requires the combination of two or more persons acting in concert."  <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1230 (10th Cir. 1990).  A plaintiff must allege, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants."  <u>Id.</u> at 1231.  The conspiracy "must be one that has the requisite statutory purpose," namely to deter a party or witness from attending or testifying freely, fully and truthfully.  <u>Brown v. Chaffee</u>, 612 F.2d 497,

502 (10th Cir. 1979). While more than mere conclusory allegations are required to state a valid claim, "the nature of conspiracies often makes it impossible to provide details at the pleading stage and . . . the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint." Brever, 40 F.3d at 1126.

To satisfy the conspiracy element, plaintiff identifies Wasinger and Douglass and claims that they engaged "in exchanges that appear[ed] preplanned or with prepared notes" that disparaged lawsuits like plaintiff's. First Amended Complaint (Doc. #34), ¶ 370. To satisfy the deterrence element, plaintiff alleges that Wasinger and Douglass linked GCCC's increasing insurance costs and significant reductions in GCCC faculty, staff and student offerings to lawsuits like plaintiff's. Plaintiff claims that by intimidation and threat, their actions deterred plaintiff from attending or testifying freely, fully and truthfully in federal court because their comments (1) implied that people involved in lawsuits like plaintiff were "bad people" and "essentially pariahs in the Garden City community;" (2) intimidated witnesses from associating with or testifying for plaintiff; and (3) threatened and harmed plaintiff's reputation in the community. Id., ¶¶ 371–76.

Defendants argue that the publicly available videos of Board meetings prove that Wasinger and Douglass (1) did not have a meeting of the minds because Douglass stated in the video that she was sharing her "personal feelings" and (2) did not make comments that could be considered "force, intimidation, or threat" under Section 1985(2) and instead only made vague comments about the economic impact of lawsuits on GCCC. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 15–16. As stated, the Court cannot consider such extrinsic evidence on a motion to dismiss. See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp., 130 F.3d at 1384. The Court also assumes the truth of plaintiff's allegations regarding the Board meetings.

Assuming as true plaintiff's well-pleaded factual allegations, plaintiff sufficiently pleads facts which create an inference that Wasinger and Douglass (1) had a meeting of the minds as demonstrated by their prepared notes and (2) intended to deter plaintiff from testifying about the Title IX allegations by bringing up plaintiff's lawsuit to stigmatize and discredit her. First Amended Complaint (Doc. #34), ¶¶ 370–76. The Court overrules defendants' motion to dismiss plaintiff's Section 1985(2) conspiracy claims.

### B. Qualified Immunity

In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity on plaintiff's Section 1985(2) conspiracy claim because defendants "are unaware of any caselaw indicating that comments about the economic impact of a lawsuit will invoke liability under § 1985(2)." Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 18. To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right. N.E.L., 740 F. App'x at 928. A right is clearly established when every reasonable official would understand that what he or she is doing violates that right. Id. at 928–29.

For the first factor, defendants argue that based on the publicly available Board meetings videos, Wasinger and Douglass' comments about insurance premiums and the economic costs of litigation "are a far cry from abusive and threatening comments" and "were neither abusive nor threatening as a matter of law." Defendants' Reply Memorandum (Doc. #85) at 9. As discussed above, the Court disregards such extrinsic evidence and accepts plaintiff's allegations that in violation of 42 U.S.C. § 1985(2), Wasinger and Douglass conspired to speak at two Board meetings in June of 2020 to intimidate plaintiff and deter her from testifying about the Title IX allegations. First Amended Complaint (Doc. #34), ¶¶ 370–76.

For the second factor, defendants do not dispute plaintiff's argument that the law clearly establishes the right to testify truthfully at trial—they instead (again) argue that the publicly available Board meetings videos prove that "no reasonable [Board] member would have thought that the specific comments made by Wasinger and Douglass [about the economic impact of lawsuits] were unlawful," i.e., threatening and intimidating under Section 1985(2). Defendants' Reply Memorandum (Doc. #85) at 9.

The First Amendment clearly establishes the right to testify truthfully at trial, especially where plaintiff has brought forth matters of public concern like a Title IX allegation. See, e.g., Patrick, 953 F.2d at 1247–48; Melton, 879 F.2d at 714. As discussed, the Court will not consider the Board meetings videos in this motion to dismiss, and plaintiff pleads sufficient facts to give rise to the inference that Wasinger and Douglass conspired to deter her from testifying by threatening and intimidating her at the public meetings, which harmed her reputation in the community and deterred individuals from supporting her efforts. First Amended Complaint (Doc. #34), ¶¶ 370–76. Wasinger and Douglass are not entitled to qualified immunity, and defendants' motion to dismiss the Section 1985(2) conspiracy claim is overruled.

### III.    Equal Protection: Official Capacity Claim

Plaintiff brings an equal protection claim under 42 U.S.C. § 1983 against Coach Knapp in his individual and official capacities. Plaintiff alleges that Coach Knapp's conduct toward her was based on sex and was sufficiently severe or pervasive as to interfere unreasonably with her education and create a hostile or abusive educational environment, which establishes an equal protection violation based on sexual harassment. See, e.g., First Amended Complaint (Doc. #34), ¶¶ 39–47, 111, 179–80, 201, 203–04, 209–12, 282–90; Escue v. N. Okla. Coll., 450 F.3d 1146, 1157 (10th Cir. 2006). Defendants move to dismiss Coach Knapp's official capacity claim solely

on the basis that it is redundant because "GCCC is already a party defendant."  Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #45) at 5–6.  Plaintiff, however, brings the equal protection claim only against Coach Knapp, not against GCCC.  First Amended Complaint (Doc. #34), ¶¶ 281–91.  Therefore plaintiff's official capacity claim against Coach Knapp is not redundant and survives dismissal.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss Elizabeth Everett's Claim (Partial) By Defendants Jeff Crist, Merilyn Douglass, Rodney Dozier, Garden City Community College, Brice Knapp, Steve Martinez, Herbert J. Swender, Blake Wasinger, Teri Worf (Doc. #44) filed October 14, 2020 is **SUSTAINED in part**.  The Court dismisses as redundant plaintiff's Section 1983 conspiracy claim against President Herbert Swender, Chief Rodney Dozier, Coach Brice Knapp and Trustees Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez and Teri Wolf in their official capacities.  Defendants' motion is otherwise **OVERRULED**.

Dated this 18th day of May, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
