## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANTONIA DOUGLASS and** | ) | |
| **ELIZABETH EVERETT,** | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-2076-KHV** |
| **GARDEN CITY COMMUNITY** | ) | |
| **COLLEGE, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

On September 16, 2020, Antonia Douglass and Elizabeth Everett filed an amended complaint against Garden City Community College ("GCCC"), Herbert J. Swender, Rodney Dozier, Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez, Teri Worf, Brice Knapp, Freddie Strawder and Garden City, Kansas through its police department. Plaintiffs allege retaliation under Title IX, 20 U.S.C. § 1681 et seq., and violations of federal civil rights under the First, Fourth, Fifth and Fourteenth Amendments, U.S. Const. amends. I, IV, V, XIV, and 42 U.S.C. § 1983. First Amended Complaint (Doc. #34). This matter is before the Court on the Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #35) filed September 29, 2020 pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court overrules defendants' motion.

## Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely

conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  The Court need not accept as true those allegations which state only legal conclusions.  See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  The Court accepts well-pleaded allegations as true and views them in the light most favorable to the non-moving party.  Sutton v. Utah State Sch. For Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Factual Background**

Plaintiffs' amended complaint alleges the following:

In 2018, Elizabeth Everett was a student at GCCC and a freshman member of the cheer squad. <u>First Amended Complaint</u> (Doc. #34), ¶¶ 7, 37. Everett recently had made informal reports that (1) from the fall of 2017 through the spring of 2018, cheer coach Brice Knapp had sexually harassed her and (2) in February of 2018, fellow cheer squad member Henry Arenas blackmailed her and demanded that she perform sexual acts with him or he would publicly release a compromising party picture of her. <u>Id.</u>, ¶¶ 39, 43. Coach Knapp had been the subject of several prior sexual harassment complaints involving cheer women, and GCCC Athletic Director ("AD") John Green knew about these complaints. <u>Id.</u>, ¶ 43.

Antonia Douglass, a resident of Garden City and host mom to GCCC student athletes like Everett,[1] also was aware of the concerns about GCCC's past and ongoing treatment of female students, including Coach Knapp's inappropriate behavior. <u>Id.</u>, ¶¶ 7, 114, 117, 150. Starting in 2017, Douglass privately reached out to GCCC administrators and encouraged students, parents and others to report their Title IX concerns to GCCC through the appropriate channels. <u>Id.</u> She also offered to deliver their messages to the GCCC Board of Trustees ("the Board") "to substantiate the depth and breadth of the problems." <u>Id.</u> When GCCC administrators and the Trustees failed to take action, Douglass came to believe that their concerns were falling on deaf ears and that GCCC was intentionally scuttling any complaints. <u>Id.</u>, ¶ 118.

---

[1] For more than 25 years, Douglass has been an active participant in GCCC programs and events, a host mom for GCCC student athletes, a volunteer for the GCCC Endowment Association and a booster for the Broncbusters Athletic Association, an athletic fundraising organization. <u>First Amended Complaint</u> (Doc. #34), ¶¶ 7, 119.

On or about February 23, 2018, AD Green called Everett into his office for an impromptu meeting.  Id., ¶¶ 36–37, 40, 43.  In the meeting, AD Green, Coach Knapp and Arenas started to aggressively confront Everett and tried to convince her that her informal reports were wrong because none of their actions were "offensive, inappropriate or amounted to sexual harassment." Id.  Everett quickly realized that the meeting was an "unsanctioned Title IX hearing" and a preemptive measure to tamp down her informal reports.  Id., ¶¶ 39, 44.  Feeling intimidated, Everett texted Douglass for help and asked her to quickly come to AD Green's office.  Id., ¶¶ 36, 40.

Douglass arrived on campus and went to AD Green's office.  Id., ¶ 48.  The assistant AD met her outside AD Green's door.  Id.  Douglass explained that Everett had sent her an urgent text message and asked her to come to the meeting.  Id.  The assistant AD stalled for time and blocked the entrance.  Id.  Douglass grew increasingly concerned, believing that "there was something to hide" and staff was actively covering up how Everett was being treated in the meeting.  Id., ¶ 49. She finally told the assistant AD "to step aside or she would call law enforcement based on Everett's plea, because something was wrong."  Id., ¶ 50.  When Douglass entered the office, she found Everett curled up in a chair in the corner, cowering in fear and surrounded by AD Green, Coach Knapp and Arenas.  Id., ¶ 51.  Everett was relieved to see Douglass and left with her shortly thereafter.  Id., ¶ 52.

After this incident, Douglass encouraged Everett to tell Everett's mother about the cheer squad's sexual harassment issues.  Id., ¶¶ 56–59.  Douglass also decided that because GCCC leadership had ignored her past concerns, she had no choice but to go public in support of the Title IX victims.  Id., ¶¶ 53, 151.  On April 10, 2018, at a Board meeting, Douglass spoke during the public comment portion.  Id., ¶¶ 84–88.  Douglass stated that GCCC employees were subjecting

Everett and other female athletes in the cheer program to "unwelcome, improper sex discrimination." Id., ¶ 90.  As evidence, she presented letters from seven women or their parents addressing sex discrimination involving Coach Knapp.  Id.  She asked the Trustees to rectify the sex discrimination problems at GCCC, but they appeared unreceptive and indifferent.  Id., ¶¶ 84–88, 90.  Everett's mother also spoke during the public comment portion, but the Board again was unreceptive.  Id., ¶¶ 84–88.  The Board also refused to reopen the public comment portion of the meeting for a female cheer student who wanted to comment on the cheer squad sexual harassment situation.  Id., ¶¶ 84–85.  At some point, the local newspaper publicized stories about the cheer scandal, and GCCC eventually severed ties with Coach Knapp.  Id., ¶¶ 93, 105.

Everett and Douglass soon started to experience backlash for coming forward with the Title IX allegations.  Id., ¶¶ 53, 91.  As for Everett, on or about May 9 or 10, 2018, Everett made a comment to another cheer squad member who openly disliked her.  Id., ¶ 163.  Detective Freddie Strawder, a Garden City Police Department ("GCPD") employee and a GCCC adjunct criminal justice instructor, learned of Everett's comment and invited the peer to come to his office the next day.  Id., ¶¶ 163–64.  In his office, Detective Strawder "dictated or directed [the peer] what to say, how to say it and how to keep pushing the envelope" over text to coax Everett into allegedly making a criminal threat against the peer.  Id., ¶¶ 164–67.  Everett believes that GCCC President Herbert Swender had "high-level meetings" with Detective Strawder and "masterminded" this incident.  Id., ¶¶ 164–67, 170, 417.  On May 10, the GCPD arrested Everett based on the text exchange for making a criminal threat and causing terror, evacuation or disruption.  Id., ¶ 165.  Everett stayed in jail overnight, and unknown individuals with access to the jail brought Everett's accuser through the jail, where the peer taunted her from outside her cell.  Id., ¶¶ 171–72.  Everett asserts that Detective Strawder arrested her without probable cause and submitted a post-arrest

affidavit to support her arrest warrant that contained "inaccurate, misleading or fabricated evidence." Id., ¶¶ 163–64, 293, 296–97.

As for Douglass, one day while on campus, she was participating in a letter of intent signing when GCCC employee Leslie Wenzel interrupted her and "rudely and abruptly whirled around, turning her back on [her]." Id., ¶ 154. On April 25, 2018, without prior warning, GCCC Campus Chief of Police Rodney Dozier and an unknown GCPD officer served Douglass with a No Trespass Notice ("Notice") banning her from campus. Id., ¶ 124. As the basis for the Notice, Chief Dozier cited the exchange with Wenzel. Id., ¶ 156. Douglass believed that GCCC issued the Notice "to intimidate and harass her, to surprise her, and to deter further comments by her and others who had spoken up at the [Board] meeting in support of female students who were being sexually harassed in violation of Title IX." Id., ¶ 125. She believed that President Swender initiated the Notice. Id., ¶ 126. Douglass asked the Board to revoke the Notice, especially because its timing prevented her from attending GCCC's graduation ceremony and other important end-of-year GCCC events. Id., ¶ 127. The Board instead enforced the Notice. Id., ¶¶ 129, 135. On July 27, 2018, without explanation or apology, GCCC lifted the Notice. Id., ¶ 132. Douglass feared the likelihood of reissuance because GCCC did not "de-weaponize" its potential use, adopt policies restricting its use or condemn its past misuse. Id., ¶¶ 133, 136.

After the Title IX allegations came to light, Everett lost friends and educational opportunities because she could not participate in extracurricular activities, experienced public contempt and ridicule and suffered extreme emotional distress that affected her grades and overall wellness. Id., ¶ 179. Likewise, Douglass suffered socially, emotionally and financially and was set apart from the associations that she had known and loved hosting student athletes. Id., ¶ 140.

**Analysis**

Plaintiffs sue GCCC, GCCC's former President Swender, several members of the GCCC Board of Trustees, Coach Knapp, GCCC Campus Chief of Police Dozier, GCPD Detective Freddie Strawder and the GCPD.  Everett alleges the following claims: (1) false arrest under the United States Constitution, U.S. Const. amends. IV, XIV, and 42 U.S.C. § 1983 against Detective Strawder in his individual and official capacities, and the GCPD under Monell v. Department of Social Services, 436 U.S. 658 (1978) and (2) malicious prosecution under the United States Constitution, U.S. Const. amends. IV, XIV, and 42 U.S.C. § 1983 against Detective Strawder in his individual and official capacities, and the GCPD under Monell.  Both Everett and Douglass allege conspiracy to interfere with civil rights under 42 U.S.C. § 1983[2] by Detective Strawder in his individual and official capacities.[3]  Defendants move to dismiss plaintiffs' complaint in its entirety for failure to state a claim.  In the alternative, based on qualified immunity, they move to dismiss the claims against Detective Strawder.  See, e.g., N.E.L. v. Douglas Cty., Colo., 740 F. App'x 920, 928 (10th Cir. 2018) (detailing threshold to overcome qualified immunity).[4]

The Court now will consider each claim in turn.

---

[2]    In plaintiffs' response, plaintiffs clarify that the claims of conspiracy to interfere with civil rights under 42 U.S.C. § 1983 "are alleged only against Strawder, not the City [under Monell]."  Memorandum In Opposition By Plaintiffs Antonia Douglass, Elizabeth Everett (Doc. #61) at 16.

[3]    Plaintiffs voluntarily dismissed without prejudice the Section 1985(3) claims for conspiracy, numbered in the amended complaint as Count VII.  Memorandum In Opposition By Plaintiffs Antonia Douglass, Elizabeth Everett (Doc. #61) at 5 n.2.

[4]    Defendants also ask the Court to deny plaintiffs' request to amend their First Amended Complaint (Doc. #34) if the Court finds deficiencies in their factual allegations.  See Memorandum In Opposition By Plaintiffs Antonia Douglass, Elizabeth Everett (Doc. #61) at 19–20; Reply To Response To Motion By Defendants Garden City, Kansas, Freddie Strawder (Doc. #71) at 7.  Because the Court overrules defendants' motion to dismiss, this issue is moot.

## I.       False Arrest And Malicious Prosecution

Everett alleges that in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, on or about May 10, 2018, Detective Strawder unlawfully arrested and maliciously prosecuted her without probable cause.  First Amended Complaint (Doc. #34), ¶¶ 293, 316–19.  Everett alleges that (1) Detective Strawder's misconduct involving his conversations with President Swender and baiting Everett over text messages "institute[ed] an illegal process resulting in her arrest and detention without probable cause" and (2) the GCPD "failed to properly train, supervise, or discipline its police officers, including Defendant Strawder, concerning the correct and best practices in evaluating probable cause to detain a person under an arrest warrant."  Id., ¶¶ 311, 321–24.  As noted, Everett brings this claim against Detective Strawder in his individual and official capacities and the GCPD under Monell.

Defendants generally argue that Everett has failed to sufficiently plead facts to support the false arrest and malicious prosecution claims because Detective Strawder had probable cause to arrest her.  In plaintiffs' amended complaint, plaintiffs referenced Detective Strawder's GCPD incident report but did not attach it as an exhibit.  See, e.g., First Amended Complaint (Doc. #34), ¶ 163.  In support of their motion to dismiss, defendants attached an incomplete version of Detective Strawder's GCPD incident report to prove the existence of probable cause.  See GCPD Incident Report (Doc. #36-1).  On a motion to dismiss, the Court cannot consider extrinsic evidence outside the complaint.  See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (court must exclude outside material unless motion converted to one for summary judgment under Rule 56).  Accordingly, the GCPD incident report that defendants attached to their motion to dismiss is not properly before the Court, and the Court disregards it when considering these claims.

-8-

### A.    False Arrest And Malicious Prosecution Allegations

To maintain a false arrest claim under Section 1983, plaintiff must demonstrate the elements of the common law tort of false arrest.  See Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996).  To recover for false arrest under Kansas law, plaintiff must show that she "was unlawfully caused to be arrested by the defendants, and, though it is not necessary that the arrest was directly ordered by the defendants, it must appear that they either instigated it, assisted in the arrest, or by some means directed, countenanced or encouraged it."  Thompson v. General Finance Co., Inc., 205 Kan. 76, 87–88, 468 P. 2d 269, 280 (1970) (citing Hammargren v. Montgomery Ward & Co., 172 Kan. 484, 241 P.2d 1192 (1952)).  To maintain a malicious prosecution claim under Section 1983, plaintiff must show that (1) defendants caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the original arrest, continued confinement or prosecution; (4) defendants acted with malice and (5) plaintiff sustained damages.  See Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018) (citing Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008)).  Consequently, in the context of false arrest and malicious prosecution claims under Section 1983, plaintiff establishes a constitutional violation by showing a lack of probable cause.  See Puller v. Baca, 781 F.3d 1190, 1196–97 (10th Cir. 2015); Koch v. City of Del City, 660 F.3d 1228, 1241–42 (10th Cir. 2011).

For both claims, defendants only argue that plaintiff has not sufficiently alleged lack of probable cause.  Defendants argue that Detective Strawder had probable cause to reasonably believe that Everett had communicated a criminal threat to her peer.  Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 9–11.  In support, defendants cite their attached incomplete version of the GCPD incident report and assert that Everett's text exchanges prove that she "wanted to fight the

victim behind the library" and "insulted the victim with vulgar names." Id. at 10.  As stated, the Court cannot consider such extrinsic evidence on a motion to dismiss.  See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp., 130 F.3d at 1384.  The Court also assumes the truth of Everett's allegations regarding her arrest.  Assuming as true plaintiff's well-pleaded factual allegations, plaintiff clearly alleges that (1) on or about May 10, 2018, Detective Strawder participated in Everett's warrantless arrest that lacked probable cause, which was followed by an unlawful detention and overnight stay in the jail; (2) Detective Strawder submitted a post-arrest affidavit to support the arrest warrant that contained inaccurate, misleading or fabricated evidence and excluded exculpatory evidence and (3) the GCPD failed to adequately train, supervise or discipline its police officers, including Detective Strawder, concerning the correct and best practices in evaluating probable cause to detain a person under an arrest warrant.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24.  The Court overrules defendants' motion to dismiss plaintiff's false arrest and malicious prosecution claims.

### B.    Qualified Immunity

In the alternative, defendants argue that Detective Strawder is entitled to qualified immunity on Everett's false arrest and malicious prosecution claims.  To overcome qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly established that right.  N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.  Plaintiff bears this burden because the Court presumes that law enforcement officers "are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs."  Puller, 781 F.3d at 1196 (internal quotations omitted).

Defendants argue that Detective Strawder had "arguable probable cause" for Everett's arrest, and therefore he is entitled to qualified immunity. Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 8–11. Again, in the context of a motion to dismiss, the Court assumes as true plaintiff's well-pleaded factual allegations that Detective Strawder violated Everett's constitutional rights by (1) arresting her without probable cause and without a warrant, which led to a lengthy detention depriving her of her liberty interests and (2) falsifying and omitting evidence in his post-arrest affidavit. See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24. The law is clearly established that a warrantless arrest without probable cause is an unlawful violation of the Fourth Amendment. See, e.g., Franks v. Delaware, 438 U.S. 154, 171–72 (1978). Likewise, the law is clearly established that falsifying or omitting evidence in a warrant for arrest is an unlawful violation of the Fourth Amendment. See, e.g., Pierce v. Gilchrist, 359 F.3d 1279, 1298–99 (10th Cir. 2004). Detective Strawder is not entitled to qualified immunity, and defendants' motion to dismiss the false arrest and malicious prosecution claims is overruled.

### C.    GCPD's Liability Under Monell

Everett alleges that under Monell, the GCPD is liable for constitutional violations by GCPD employees under GCPD custom or policy. First Amended Complaint (Doc. #34), ¶¶ 311–13, 323–25; Monell, 436 U.S. at 694. Local governments or municipalities, including the GCPD through the city of Garden City, can be held liable for their employees' actions if they were taken pursuant to GCPD "official policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); Monell, 436 U.S. at 694. To plead liability under Monell and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or

policy and (3) a direct causal link between the custom or policy and the violation alleged.  See Monell, 436 U.S. at 694; Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

Defendants argue that (1) Detective Strawder did not violate Everett's constitutional rights, which forecloses any claim against the GCPD and (2) Everett pleads "no factual support whatsoever" for deliberate indifference or for any deficiencies in the GCPD's training or supervision of officers in evaluating probable cause.  Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 12–14.

As stated above, plaintiff sufficiently alleges that Detective Strawder, a GCPD employee, violated Everett's constitutional rights by arresting her without probable cause and falsifying and omitting evidence in his post-arrest affidavit.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24.  Plaintiff further alleges that Detective Strawder's actions were based on the GCPD custom or policy of failing to adequately train or supervise employees.  Id.  Plaintiff pleads that the GCPD "failed to properly train, supervise, or discipline its police officers, including [Detective] Strawder, concerning the correct and best practices in evaluating probable cause to detain a person under an arrest warrant, especially where a criminal threat charge is involved, thereby permitting [Detective] Strawder to be in a position to violate [Everett's] constitutional rights."  Id., ¶¶ 311, 323.  Plaintiff also pleads that Garden City, "being aware that [its] lack of training, supervision, and discipline leads to improper conduct by its employee police officers, acted with deliberate indifference in failing to establish a program of effective training, supervision and discipline."  Id., ¶¶ 312, 324; see also Waller v. City and Cnty. of Denver, 932 F.3d 1277, 1283 (2019) (municipal policy or custom can take form of "failure to adequately train or supervise employees, so long as that failure results from

deliberate indifference to the injuries that may be caused").  Because plaintiff has alleged that Detective Strawder's actions were taken pursuant to the GCPD custom of lack of training, the GCPD may be subject to municipal liability if the underlying conduct violated the Constitution. The false arrest and malicious prosecution claims against the GCPD therefore survive under Monell.

## II.    Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1983

Plaintiffs allege that in violation of 42 U.S.C. § 1983, defendants conspired to deter them from speaking about Title IX issues on the GCCC campus by (1) orchestrating Everett's false arrest on May 10, 2018, and (2) orchestrating the issuance of Douglass' Notice from April 25 to July 27, 2018, to ban her from campus events and involvement with anyone on campus, including Title IX victims.  First Amended Complaint (Doc. #34), ¶¶ 394, 397, 418.  Plaintiffs allege that Detective Strawder's actions were the result of "high-level meetings" with President Swender, who was aware of plaintiffs' Title IX activity and wanted to punish them for criticizing his oversight of GCCC.  Id., ¶ 417.  Everett alleges that her arrest caused psychological injury, emotional distress, reputational harm, bodily harm and economic harm because she had to pay for court costs, bond and criminal attorney's fees.  Id., ¶¶ 418–19.  Douglass alleges that the Notice caused a chilling prior restraint on her speech, harmed her reputation and hurt her emotionally, physically and economically.  Id., ¶ 403.  As noted, plaintiffs bring this claim against Detective Strawder in his individual and official capacities.

Defendants seek to dismiss this claim on the following grounds: (1) plaintiff did not sufficiently plead facts establishing a conspiracy or an agreement among defendants and (2) Detective Strawder is entitled to qualified immunity because no underlying constitutional violation exists and the law is not clearly established in this district.  Memorandum In Support Of

Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 15–18.  The Court considers each argument in turn.

### A.    Section 1983 Conspiracy Allegations

To succeed on a conspiracy claim under Section 1983, plaintiffs must allege (1) specific facts that show an agreement and concerted action among defendants and (2) an actual deprivation of a constitutional right.  Maier v. Kansas, No. 16-3219-SAC, 2017 WL 552629, at *3 (D. Kan. Feb. 10, 2017).  Plaintiffs must allege facts that manifest a "specific goal to violate [plaintiffs'] constitutional rights by engaging in a particular course of action."  Bledsoe v. Jefferson Cnty., 275 F. Supp. 3d 1240, 1252 (D. Kan. 2017).  Because direct evidence of an agreement to join a conspiracy is rare, the Court can infer assent "from acts furthering the conspiracy's purpose."  Id.  The Court decides on a case-by-case basis whether plaintiffs have alleged sufficient facts to support a conspiracy claim.  Id.

Defendants argue that plaintiffs' allegations are "outlandish," "sheer speculation" and "unbridled conjecture."  Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 5, 16–17.  Defendants assert that no pleaded facts support an inference that Detective Strawder or the GCPD knew that plaintiffs were exercising their First Amendment rights or that Detective Strawder and President Swender had a meeting of the minds.  Id. at 5–6.  They argue that the pleaded facts indicate *only* that Detective Strawder investigated Everett's alleged threat and developed probable cause to arrest her based on that threat.  Id. at 6.

The Court disagrees.  In the context of a motion to dismiss, plaintiffs must put defendants on notice of their claims, not plead all of their evidence.  See Fed. R. Civ. P. 8(a); see also Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993)

(requiring complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief").   Assuming as true plaintiffs' well-pleaded factual allegations, plaintiffs sufficiently plead facts which create an inference that (1) in the spring of 2018, President Swender and Detective Strawder—who was also a GCCC employee and therefore was loyal to President Swender—participated in multiple high-level meetings about Title IX reporting by Everett and Douglass, (2) not long after these meetings, Detective Strawder and President Swender orchestrated Everett's arrest and issuance of Douglass' Notice and (3) as Detective Strawder and President Swender detained, intimidated and attempted to silence them for reporting Title IX concerns, they violated plaintiffs' First Amendment rights of speech, association and petition.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24, 394, 399–400, 418–19.  The Court overrules defendants' motion to dismiss plaintiffs' Section 1983 conspiracy claims.

## B.    Qualified Immunity

In the alternative, defendants argue that Detective Strawder is entitled to qualified immunity on plaintiffs' Section 1983 conspiracy claims because (1) no underlying constitutional violation exists and (2) "it is not clearly established that he could join an unlawful conspiracy by carrying out his law enforcement duties."  Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 17–18.  To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right.  N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.

For the first factor, as discussed above, plaintiffs have sufficiently pled that (1) they were engaged in protected First Amendment activities when they reported the Title IX violations and publicly supported Title IX victims and (2) to silence and intimidate them, Detective Strawder and President Swender conspired to orchestrate Everett's arrest and the issuance of Douglass' Notice. See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24, 394, 399–400, 417–19.

For the second factor, defendants argue that "it would not be apparent to a reasonable officer that . . . performing his law enforcement functions could constitute participation in an unlawful conspiracy." Memorandum In Support Of Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder (Doc. #36) at 17–18. Plaintiffs, however, allege more than Detective Strawder performing law enforcement functions—they allege that he actively participated in a conspiracy with President Swender to silence Title IX critics and curtail plaintiffs' rights of association and speech through Everett's arrest and Douglass' Notice. See, e.g., First Amended Complaint (Doc. #34), ¶¶ 30, 163–64, 166, 293, 297, 299–303, 306–07, 309, 321, 323–24, 394, 399–400, 417–19. The law in the Tenth Circuit is clearly established that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983. See Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2001); see also Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cty., No. CIV-17-096-KEW, 2018 WL 6419296, at *9 (E.D. Okla. Dec. 6, 2018). A reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiffs' First Amendment rights. See, e.g., Worrell, 219 F.3d at 1212. Detective Strawder is not entitled to qualified immunity, and defendants' motion to dismiss the Section 1983 conspiracy claims is overruled.

**IT IS THEREFORE ORDERED** that defendants' <u>Motion To Dismiss For Failure To State A Claim By Defendants Garden City, Kansas, Freddie Strawder</u> (Doc. #35) filed September 29, 2020 is **OVERRULED**.

Dated this 8th day of June, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge
