## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANTONIA DOUGLASS and** | ) | |
| **ELIZABETH EVERETT,** | ) | |
| Plaintiffs, | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 20-2076-KHV** |
| **GARDEN CITY COMMUNITY** | ) | |
| **COLLEGE, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

On September 16, 2020, Antonia Douglass and Elizabeth Everett filed an amended complaint against Garden City Community College ("GCCC"), Herbert J. Swender, Rodney Dozier, Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez, Teri Worf, Brice Knapp, Freddie Strawder and Garden City, Kansas through its police department.  Plaintiffs allege retaliation under Title IX, 20 U.S.C. § 1681 et seq., and violations of federal civil rights under the First, Fourth, Fifth and Fourteenth Amendments, U.S. Const. amends. I, IV, V, XIV, and 42 U.S.C. § 1983.  First Amended Complaint (Doc. #34).  This matter is before the Court on the Motion To Dismiss Antonia Douglass's Complaint By Defendants Jeff Crist, Merilyn Douglass, Rodney Dozier, Garden City Community College, Brice Knapp, Steve Martinez, Herbert J. Swender, Blake Wasinger, Teri Worf (Doc. #48) filed October 15, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the Court overrules in part and sustains in part defendants' motion.

## Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an

entitlement of relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  The Court need not accept as true those allegations which state only legal conclusions.  See id.

Plaintiff bears the burden of framing her claim with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id.  (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  The Court accepts well-pleaded allegations as true and views them in

the light most favorable to the non-moving party.  Sutton v. Utah State Sch. For Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Factual Background**

Plaintiffs' amended complaint alleges the following:

Antonia Douglass is a resident of Garden City, Kansas.  First Amended Complaint (Doc. #34), ¶ 7.  For more than 25 years, she has been an active participant in GCCC programs and events, a host mom for GCCC student athletes, a volunteer for the GCCC Endowment Association and a booster for the Broncbusters Athletic Association, an athletic fundraising organization.  Id., ¶¶ 7, 119.  Starting in 2017, individuals began to share concerns with Douglass about GCCC's past and ongoing treatment of female students, in particular cheer coach Brice Knapp's inappropriate behavior toward female cheer squad members.  Id., ¶¶ 117, 150.  Douglass privately reached out to GCCC administrators and encouraged students, parents and others to report their Title IX concerns to GCCC through the appropriate channels.  Id.  She also offered to deliver their messages to the GCCC Board of Trustees ("the Board") "to substantiate the depth and breadth of the problems."  Id.  When GCCC administrators and the Trustees failed to take action, Douglass came to believe that their concerns were falling on deaf ears and that GCCC was intentionally scuttling any complaints.  Id., ¶ 118.

On or about February 23, 2018, Douglass received an urgent text message from Elizabeth Everett, a GCCC cheer squad member.  Id., ¶¶ 7, 36.  Everett asked Douglass to quickly come to the office of GCCC Athletic Director ("AD") John Green.  Id., ¶ 36.  Everett recently had made informal reports that (1) from the fall of 2017 through the spring of 2018, Coach Knapp had sexually harassed her and (2) in February of 2018, a fellow cheer squad member Henry Arenas blackmailed her and demanded that she perform sexual acts with him or he would publicly release

a compromising party picture of her.  Id., ¶¶ 39, 43.  In response, AD Green had called Everett into his office for an impromptu meeting where he, Coach Knapp and Arenas aggressively confronted her and tried to convince her that her informal reports were wrong because none of their actions were "offensive, inappropriate or amounted to sexual harassment." Id., ¶¶ 36–37, 40, 43.  Everett quickly realized that the meeting was an "unsanctioned Title IX hearing" and a preemptive measure to tamp down her informal reports.  Id., ¶¶ 39, 44.  Feeling intimidated, Everett texted Douglass for help. Id., ¶¶ 7, 40.

Douglass arrived on campus and went to AD Green's office.  Id., ¶ 48.  The assistant AD met her outside of AD Green's door.  Id.  Douglass explained that Everett had sent her an urgent text message and asked her to come to the meeting.  Id.  The assistant AD stalled for time and blocked the entrance.  Id.  Douglass grew increasingly concerned, believing that "there was something to hide" and that staff was actively covering up how Everett was being treated in the meeting.  Id., ¶ 49.  She finally told the assistant AD "to step aside or she would call law enforcement based on Everett's plea, because something was wrong."  Id., ¶ 50.  When Douglass entered the office, she found Everett curled up in a chair in the corner, cowering in fear and surrounded by AD Green, Coach Knapp and Arenas.  Id., ¶ 51.  Everett was relieved to see Douglass and left with her shortly thereafter.  Id., ¶ 52.

After this incident, Douglass encouraged Everett to tell Everett's mother about the cheer squad's sexual harassment issues.  Id., ¶¶ 56–59.  Douglass also decided that because GCCC leadership had ignored her past concerns, she had no choice but to go public in support of the Title IX victims.  Id., ¶¶ 53, 151.  On April 10, 2018, at a Board meeting, Douglass spoke during the public comment portion.  Id., ¶¶ 84–88.  Douglass stated that GCCC employees were subjecting Everett and other female athletes in the cheer program to "unwelcome, improper sex

discrimination." Id., ¶ 90.  As evidence, she presented letters from seven women or their parents addressing sex discrimination involving Coach Knapp.  Id.  She asked the Trustees to rectify the sex discrimination problems at GCCC, but they appeared unreceptive and indifferent.  Id., ¶¶ 84–88, 90.  At some point, the local newspaper publicized stories about the cheer scandal, and GCCC eventually severed ties with Coach Knapp.  Id., ¶¶ 93, 105.

GCCC and the Board soon started to retaliate against Douglass for supporting Title IX victims.  Id., ¶¶ 53, 91.  One day in particular while on campus, Douglass was participating in a letter of intent signing and speaking about the Title IX allegations when GCCC employee Leslie Wenzel interrupted her and "rudely and abruptly whirled around, turning her back on [her]."  Id., ¶ 154.  On April 25, 2018, without prior warning, the GCCC Campus Chief of Police Rodney Dozier and an unknown Garden City Police Department ("GCPD") officer served Douglass with a No Trespass Notice ("Notice") banning her from campus.  Id., ¶¶ 124–25.  As the basis for the Notice, Chief Dozier cited the exchange with Wenzel.  Id., ¶ 156.  Douglass believed that GCCC issued the Notice "to intimidate and harass her, to surprise her, and to deter further comments by her and others who had spoken up at the [Board] meeting in support of female students who were being sexually harassed in violation of Title IX."  Id., ¶ 125.  She believed that President Herbert Swender initiated the Notice.  Id., ¶ 126.

Douglass asked the Trustees to revoke the Notice, especially because its timing prevented her from attending GCCC's graduation ceremony and other important end-of-year GCCC events.  Id., ¶ 127.  The Trustees instead enforced the Notice.  Id., ¶¶ 129, 135.  On July 27, 2018, without explanation or apology, GCCC lifted the Notice.  Id., ¶ 132.  Douglass feared the likelihood of reissuance because GCCC did not "de-weaponize" its potential use, adopt policies restricting its use or condemn its past misuse.  Id., ¶¶ 133, 136.

Meanwhile, in the summer of 2018, the Board hired an independent investigator to look into the cheer squad scandal and related Title IX allegations.  Id., ¶ 80.  In January of 2019, the Board voted to approve the independent investigator's report even though it contained misstatements of fact and fraudulent findings.  Id., ¶¶ 80–81.  In the summer of 2019, after a Board budget meeting, the Trustees insisted that Douglass should just "move on" regardless of their failure to adopt permanent changes.  Id., ¶ 134.  Further, at Board meetings in June of 2020, Trustees Blake Wasinger and Merilyn Douglass expressed frustration at lawsuits like plaintiff's because they increased GCCC's insurance rates and wrongfully harmed the college financially.  Id., ¶¶ 370–71.  Their comments derided Douglass as a bad person and intimidated witnesses from associating with or testifying for her.  Id., ¶¶ 371–73.  After Douglass publicly supported the Title IX victims, she suffered socially, emotionally and financially and was set apart from the associations that she had known and loved hosting student athletes.  Id., ¶ 140.

<u>Analysis</u>

Douglass sues GCCC, GCCC's former President Swender, several members of the GCCC Board of Trustees, Coach Knapp, GCCC Campus Chief of Police Dozier, GCPD Detective Freddie Strawder and Garden City, Kansas/the GCPD.  She alleges the following claims: (1) Title IX retaliation by GCCC in violation of 20 U.S.C. § 1681 <u>et seq.</u>; (2) First Amendment retaliation under the United States Constitution, U.S. Const. amends. I, XIV, and 42 U.S.C. § 1983 by President Swender, Chief Dozier and the Trustees in their individual and official capacities, and

GCCC under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978);[1] (3) a Due Process violation under the United States Constitution, U.S. Const. amend. XIV, and 42 U.S.C. § 1983 by President Swender, Chief Dozier and the Trustees in their individual and official capacities, and GCCC under <u>Monell</u>; (4) conspiracy to interfere with civil rights under 42 U.S.C. § 1983 by individual defendants in their individual and official capacities, and GCCC under <u>Monell</u>; and (5) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2) by Trustees Wasinger and Douglass in their individual capacities.[2]

GCCC, President Swender, Chief Dozier, Coach Knapp and Trustees Crist, Douglass, Martinez, Wasinger and Worf move to dismiss the following claims for failure to state a claim: (1) Title IX retaliation claim against GCCC; (2) First Amendment retaliation claim against GCCC and the individual defendants in their individual and official capacities; (3) the Due Process claim against GCCC and the individual defendants in their individual and official capacities; (4) Section 1983 conspiracy claim against GCCC and the individual defendants in their individual and official capacities; and (5) Section 1985(2) conspiracy claim against Trustees Wasinger and Douglass in their individual capacities.  In the alternative, defendants move to dismiss as redundant plaintiff's official capacity claims against individual defendants and to dismiss under qualified immunity

---

[1]     The Court assumes that plaintiff alleges her so-called "<u>Lozman</u> claim" (Count XI) in support of her First Amendment retaliation claim (Count V).  <u>First Amended Complaint</u> (Doc. #34), ¶¶ 231–37, 327–67.  In <u>Lozman v. City of Riviera Beach, Florida</u>, 138 S. Ct. 1945 (2018), the Supreme Court held that as a matter of law, probable cause for the plaintiff's arrest did not defeat his Section 1983 retaliation claim.  <u>Lozman</u> and its progeny do not state a separate cause of action.  <u>See Lozman</u>, 138 S. Ct. at 1955; <u>see also</u> <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1727 (2019).  Here, plaintiff alleges that defendants issued her a No Trespass Notice <u>without</u> probable cause.  <u>First Amended Complaint</u> (Doc. #34), ¶ 31.  Accordingly, <u>Lozman</u> is not applicable, and any analysis related to Count XI is subsumed in the First Amendment retaliation analysis.

[2]     Plaintiff voluntarily dismissed without prejudice the Section 1985(3) claim for conspiracy, numbered in the amended complaint as Count VII.  <u>Memorandum In Opposition By Plaintiff Antonia Douglass</u> (Doc. #73) at 11 n.5.

plaintiff's First Amendment, Due Process, Section 1983 and Section 1985(2) conspiracy claims against individual defendants.  See, e.g., N.E.L. v. Douglas Cty., Colo., 740 F. App'x 920, 928 (10th Cir. 2018) (detailing threshold to overcome qualified immunity).

Defendants generally argue that (1) plaintiff has failed to sufficiently plead facts to support her claims and (2) the documents that plaintiff "incorporated by reference" but did not include in her amended complaint demonstrate that plaintiff is misstating alleged facts.  Specifically, in her amended complaint, plaintiff references the Notice, the independent investigator's report and online public videos of the Board of Trustees' meetings, but she does not attach them as exhibits.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 87, 370, 409, 411.  In support of their motion to dismiss, defendants attached two exhibits—one of the purported Notice and one of an email exchange among GCCC staff about the Notice's parameters.  See Exhibit A: No Trespass Notice (Doc. #49-1); Exhibit B: GCCC Email (Doc. #49-2).  On a motion to dismiss, the Court cannot consider extrinsic evidence outside the complaint.  See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (court must exclude outside material unless motion converted to one for summary judgment under Rule 56).  Further, while the Court may take judicial notice of matters in the public record such as the independent investigator's report and the Board's public meetings videos, such notice is limited to the document's existence, not its accuracy.  More to the point, under Rule 8(a), Fed. R. Civ. P., a pleading that states a claim for relief must contain a "short and plain statement of the claim."  Evaluated against that standard, the purported "incorporations by reference" are surplusage, immaterial and impertinent.  Accordingly, under Rule 12(f)(1), Fed. R. Civ. P., the Court strikes these references from plaintiff's amended complaint and does not consider them or defendants' attached exhibits in deciding defendants' motion to dismiss.

The Court now will consider each claim in turn.

## I.      Title IX Retaliation

Plaintiff alleges that GCCC violated her rights to be free from retaliation under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq.  Because reporting incidents of discrimination is integral to Title IX enforcement, Title IX protects from retaliation individuals who report discrimination.  See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 180–81 (2005).  To state a claim for retaliation under Title IX, plaintiff must allege that (1) she engaged in protected activity; (2) GCCC knew of the protected activity; (3) GCCC took materially adverse school-related action against plaintiff; and (4) a causal connection occurred between the protected activity and the adverse action.  Tackett v. Univ. of Kan., 234 F. Supp. 3d 1100, 1109 (D. Kan. 2017); C.T. v. Liberal Sch. Dist., 562 F. Supp. 2d 1324, 1336 (D. Kan. 2008).

GCCC's only challenge is that plaintiff does not plead sufficient facts that she is within the class of people whom Title IX protects and GCCC therefore cannot be liable.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9–12.  GCCC asserts that plaintiff only pleads that she is a community supporter and booster, not a GCCC student or faculty member, and that she falls outside the Title IX protections for retaliation.  Id.

The Court disagrees.  In the context of Title IX retaliation, plaintiff is not required to plead that she is a GCCC student or faculty member.  Title IX's enforcement scheme depends on individual reporting and accordingly protects from retaliation individuals who witness and report discrimination.  See Jackson, 544 U.S. at 180–81.  Plaintiff sufficiently pleads that for more than 25 years she served as a host mom for GCCC student athletes, a volunteer for the GCCC Endowment Association and a booster for a college-sanctioned fundraising organization.  First Amended Complaint (Doc. #34), ¶¶ 7, 119.  Adult employees or school leaders like plaintiff "are

often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators." <u>Jackson</u>, 544 U.S. at 181. The Court therefore overrules defendants' motion to dismiss plaintiff's Title IX retaliation claims.

## II.   First Amendment Retaliation

Plaintiff alleges that GCCC and the individual defendants, in both their individual and official capacities, violated her First Amendment rights of speech, association and petition in a series of animus-based retaliatory acts which they carried out because she publicly reported Title IX concerns and supported Title IX victims. <u>See</u> U.S. Const. amends. I, XIV; 42 U.S.C. § 1983; <u>First Amended Complaint</u> (Doc. #34), ¶¶ 233–36.   To state a claim for First Amendment retaliation, plaintiff must show that (1) she was engaged in constitutionally protected activity; (2) defendants' actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) plaintiff's exercise of constitutionally protected conduct substantially motivated defendants' adverse action.  <u>Van Deelen v. Johnson</u>, 497 F.3d 1151, 1155–56 (10th Cir. 2007); <u>Worrell v. Henry</u>, 219 F.3d 1197, 1212–13 (10th Cir. 2001) (establishing the <u>Worrell</u> framework).  As noted, plaintiff brings this claim against (1) the individual defendants in their individual and official capacities and (2) GCCC directly under <u>Monell</u>.

Plaintiff alleges the following constitutionally protected activities and retaliatory actions: (1) because plaintiff supported and associated with Title IX victims, defendants retaliated against her by publicly shaming her at Board meetings and issuing the Notice without probable cause that banned her from campus and GCCC events; (2) the Trustees failed to intercede when plaintiff asked them to revoke the Notice and instead enforced it; and (3) defendants failed to fix Board

custom, polices and/or practices associated with retaliatory behavior based on the content of speech and gender based discrimination.  First Amended Complaint (Doc. #34), ¶¶ 233, 327–66.

Defendants seek to dismiss this claim on the following grounds: (1) plaintiff did not sufficiently identify who prepared, directed or executed the Notice; (2) the individual defendants are entitled to qualified immunity because the law is not clearly established in this district; (3) GCCC cannot be held liable under Monell because she does not plead a GCCC custom, policy or practice; and (4) plaintiff's official capacity claims against the individual defendants are redundant.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9, 12–22.  The Court will address each of defendants' arguments in turn.

A.      First Amendment Retaliation Allegations

Defendants first argue that plaintiff did not sufficiently identify who exactly prepared, directed or executed the Notice and that she instead blames all defendants equally "for their alleged (but unidentified) role in delivering and implementing the No Trespass Notice."  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 14–15.  The Court disagrees.  First, in the context of a motion to dismiss, prior to discovery plaintiff must put defendants on notice of her claims—not plead all of her evidence.  See Fed. R. Civ. P. 8(a); see also Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168 (1993) (requiring complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief").  Second, plaintiff pleads facts which create an inference that (1) she was engaged in the constitutionally protected activity of reporting Title IX allegations to the Board and GCCC employees; (2) in response, President Swender, Chief Dozier and named employees of GCCC publicly shamed plaintiff and issued the Notice without probable cause on April 25, 2018, to silence and punish her; and (3) plaintiff's Title IX reporting substantially motivated defendants'

comments and issuance of the Notice.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59; Worrell, 219 F.3d at 1212–13.  The Court therefore overrules defendants' motion to dismiss plaintiff's First Amendment retaliation claims.

###    B.    Qualified Immunity

In the alternative, defendants argue that the individual defendants (President Swender, Chief Dozier, Coach Knapp and Trustees Douglass, Wasinger, Crist, Martinez and Worf) are entitled to qualified immunity on plaintiff's First Amendment retaliation claims because the law is not clearly established.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 16–19.  To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right.  See N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.  Once plaintiff establishes an inference that defendants' conduct violated a clearly established constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 876–77 (10th Cir. 1993).

In support of the lack of clearly established law, defendants cite Hirt v. Unified School District No. 287, No. 2:17-CV-02279-HLT, 2019 WL 1866321 (D. Kan. Apr. 24, 2019), aff'd sub nom. Clark v. Unified Sch. Dist. No. 287, 822 F. App'x 706 (10th Cir. 2020).  In Hirt, a school district banned a community member from its campus because he insulted various school board members at school board meetings, and the District of Kansas determined on April 24, 2019, that Kansas law had not clearly established that an indefinite ban of a member of the public from a school campus violated the First Amendment.  Id. at *18–19.  Defendants likewise argue that when they issued the Notice on April 25, 2018, they could not be on notice that this action would violate

clearly established rights.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 16–19.

Defendants' focus, however, is too narrow.  Here, plaintiff has sufficiently pled that (1) she was engaged in protected First Amendment activities when she reported the Title IX violations and (2) President Swender, Chief Dozier, Coach Knapp and the Trustees subjected her to retaliatory treatment.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 420.  Defendants' retaliatory behavior was not limited to the issuance of the Notice—they also publicly shamed her and blamed her for GCCC's financial woes at Board meetings, interfered with her ability to host student athletes and intimidated witnesses from associating with or testifying for her.  Id.  In the Tenth Circuit, the law is clearly established that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983.  See Worrell, 219 F.3d at 1212; see also Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cty., No. CIV-17-096-KEW, 2018 WL 6419296, at *9 (E.D. Okla. Dec. 6, 2018).  A reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiff's First Amendment rights.  See, e.g., Worrell, 219 F.3d at 1212.  Consequently, the individual defendants are not entitled to qualified immunity based on a lack of clear law in this district. Defendants' motion to dismiss the First Amendment retaliation claims against the individual defendants is therefore overruled.

### C.    GCCC's Liability Under Monell

Plaintiff alleges that under Monell, GCCC is liable for constitutional violations by GCCC employees under GCCC custom or policy.  First Amended Complaint (Doc. #34), ¶¶ 232–33; Monell, 436 U.S. at 694.  Local governments or municipalities, including GCCC, can be held liable for their employees' actions if they were taken pursuant to GCCC's "official policy."  Pembaur v.

City of Cincinnati, 475 U.S. 469, 479 (1986); Monell, 436 U.S. at 694.  To allege liability under Monell and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged.  See Monell, 436 U.S. at 694; Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

Defendants argue that the Notice "is not an official GCCC policy or custom and identifies no GCCC policy" and that plaintiff "identifies no circumstances indicating that GCCC has a history or habit of serving No Trespass Notices on community members."  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 20.  Defendants also argue that President Swender and Chief Dozier are not the final decisionmakers responsible for the Notice and therefore lack final policymaking authority.  Id. at 21–22.

As stated above, plaintiff sufficiently alleges that GCCC employees—President Swender, Chief Dozier, Coach Knapp and the Trustees—violated plaintiff's constitutional rights when they retaliated against her for reporting Title IX issues.  The retaliation included employing intimidation tactics such as issuing the Notice, but it also included silencing her at Board meetings and publicly blaming her for GCCC's financial woes.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 420.  Further, plaintiff alleges that these retaliatory actions were based on GCCC's Title IX policy or custom to act in concert to intentionally scuttle any Title IX complaints, silence and intimidate critics and inadequately enforce Title IX.  Id., ¶¶ 118, 233.  Because plaintiff has alleged that the retaliatory conduct of President Swender, Chief Dozier, Coach Knapp and the Trustees was taken pursuant to GCCC's Title IX policy, GCCC may be subject to municipal liability if the underlying conduct violated the Constitution.  The First Amendment retaliation claim against GCCC therefore survives under Monell.

-14-

D.      **Official Capacity Claims**

Plaintiff asserts her First Amendment retaliation claims against President Swender, Chief Dozier, Coach Knapp and the Trustees (Douglass, Wasinger, Crist, Martinez and Worf) both in their individual and official capacities.  Defendants argue that the claims against these individual defendants in their official capacities are redundant in view of the claim against GCCC. Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9. In response, plaintiff contends that the official capacity claims are not redundant because their scope of recoverable damages is broader than the scope of recoverable damages against GCCC— namely, punitive damages are not permitted in suits against municipalities but are available against individuals sued in their official capacities.  Memorandum In Opposition By Plaintiff Antonia Douglass (Doc. #73) at 53–54.  Plaintiff relies on Youren v. Tintic School District, 343 F.3d 1296 (10th Cir. 2003), where the Tenth Circuit found sufficient evidence to warrant a trial on punitive damages against an individual defendant in her official capacity.[3]

Courts in this district have routinely dismissed official capacity claims as redundant when the local government or municipality is also a defendant, and have rejected the argument that official capacity claims should not be dismissed when plaintiff seeks punitive damages.  See Thouvenell v. City of Pittsburg, Kan., No. 2:18-CV-2113-JAR-KGG, 2018 WL 3068199, at *3 (D. Kan. June 21, 2018); Quintero v. City of Wichita, No. 15-1326-EFM-GEB, 2016 WL 5871883, at *1 (D. Kan. Oct. 7, 2016) (plaintiff had avenue for punitive damages through individual capacity claim); Smith v. Stuteville, No. 14-2197-JWL, 2014 WL 3557641, at *4 n.1 (D. Kan. July 18,

---

[3]      The Court notes that in Youren, the question was not whether the claims were duplicative, but whether the official capacity damages amounted to "impermissible double recovery."  343 F.3d at 1306.  The defendant also was sued only in her official capacity, not as an individual.  Id.

2014) (individuals sued in official capacities immune from punitive damages).  The Tenth Circuit acknowledges that <u>Youren</u> is "an anomalous outlier" and recognizes that courts within the Tenth Circuit ignore <u>Youren</u> when dismissing official capacity claims under Section 1983.  <u>See, e.g.</u>, <u>Cross Continent Dev., LLC v. Town of Akron, Colo.</u>, 548 F. App'x 524, 531 (10th Cir. 2013); <u>Thouvenell</u>, 2018 WL 3068199, at *3.  Even if <u>Youren</u> continues to be good law, plaintiff's case is distinguishable because unlike in <u>Youren</u>, plaintiff alleges individual capacity claims against all of the individually named defendants.

Because plaintiff brings her First Amendment retaliation claims against both GCCC and the individual defendants in their official capacities, plaintiff's official capacity claims against Swender, Dozier, Knapp, Douglass, Wasinger, Crist, Martinez and Worf are duplicative.  The Court therefore dismisses the official capacity claims against these defendants.

**III.      Procedural Due Process**

Plaintiff brings a due process claim under 42 U.S.C. § 1983 against President Swender, Chief Dozier and the Trustees in their individual and official capacities, and GCCC under <u>Monell</u>. Plaintiff alleges that defendants violated the due process clause by (1) wrongfully issuing and enforcing the Notice that banned her from GCCC events effective April 25, 2018, because she reported Title IX allegations and supported Title IX victims and (2) failing to give her an identifiable procedure or mechanism within the Notice provisions that would allow her to challenge its nature, adequacy, justification, procedural and/or unconstitutional provisions.  <u>See</u> <u>First Amended Complaint</u> (Doc. #34), ¶ 240.  Plaintiff further alleges that defendants provided an appeal procedure or mechanism to other individuals who received a Notice but refused to provide one to her.  <u>Id.</u>

Procedural due process claims are evaluated under a two-step process: (1) whether a protected property or liberty interest implicates due process protections and (2) whether the procedures used to deprive plaintiff of that interest were constitutionally sufficient.  Moore v. Bd. of Cty. Comm'rs, 507 F.3d 1257, 1259 (10th Cir. 2007).  Defendants move to dismiss the claim because they argue that plaintiff does not have a protected property interest in attending GCCC events or entering onto school property.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 22–25.  The Court agrees that under Tenth Circuit law, plaintiff does not have a protected interest in entering GCCC property.  See, e.g., McCook v. Spriner Sch. Dist., 44 F. App'x 896, 910 (10th Cir. 2002) (plaintiffs "presented no authority establishing a constitutional right to go onto school property"); Hirt, 2019 WL 1866321, at *9–10. Plaintiff, however, also alleges that she has a protected right of association and speech in relation to her Title IX activity and that defendants deprived her of these First Amendment rights without due process.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 240, 420.  Plaintiff alleges that when defendants wrongfully issued the Notice, they prevented her from reporting Title IX violations on campus, supporting Title IX victims on campus and hosting GCCC student athletes.  Id.  Plaintiff has alleged sufficient facts to give rise to an inference that defendants denied her due process rights.

In the alternative, defendants argue that the individual defendants are entitled to qualified immunity because the law in the Tenth Circuit does not clearly establish a property interest in attending events on college campuses.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 25.  Again, while plaintiff does not have a protected interest in entering GCCC property, through the Notice, defendants interfered with her ability to report Title IX allegations and support Title IX victims on campus.  First Amended Complaint (Doc.

#34), ¶¶ 123–59, 240.  The law clearly establishes that governmental actors may not interfere with protected interests like association and speech if the procedures attendant upon that deprivation are constitutionally insufficient.  See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976); Moore, 507 F.3d at 1259.  Consequently, the individual defendants are not entitled to qualified immunity.

Last, plaintiff asserts her procedural due process claim against President Swender, Chief Dozier and the Trustees (Crist, Douglass, Martinez, Wasinger and Worf) in their individual and official capacities.  As with plaintiff's First Amendment retaliation claim, defendants argue that the official capacity claims are redundant in view of the claim against GCCC.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9.  Plaintiff again contends that the official capacity claims are not redundant under Youren.  Memorandum In Opposition By Plaintiff Antonia Douglass (Doc. #73) at 53–54.  Following the same analysis as discussed above, plaintiff's official capacity claims against Swender, Dozier, Douglass, Wasinger, Crist, Martinez and Worf are duplicative because plaintiff brings her due process claim against both GCCC and the individual defendants in their official capacities.  The Court therefore dismisses the official capacity claims against these defendants.

## IV.    Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1983

Plaintiff alleges that in violation of 42 U.S.C. § 1983, defendants conspired to deter her from speaking about Title IX issues on the GCCC campus by (1) orchestrating the issuance of the Notice from April 25 to July 27, 2018, to ban her from involvement with anyone on campus (including Title IX victims) or at campus events and (2) endorsing comments by Trustees Wasinger and Douglass at Board meetings on June 9 and June 25, 2020, that blamed lawsuits like plaintiff's for harming GCCC.  First Amended Complaint (Doc. #34), ¶¶ 384–420.  She alleges that the Notice and comments caused a chilling prior restraint on her speech, harmed her reputation

and hurt her emotionally, physically and economically.  Id., ¶ 403.  She also alleges that defendants' actions intimidated her from testifying in court about the Title IX allegations.  Id., ¶ 420.  As noted, plaintiff brings this claim against (1) the individual defendants in their individual and official capacities and (2) GCCC directly under Monell.

Defendants seek to dismiss this claim on the following grounds: (1) plaintiff did not sufficiently plead facts establishing a conspiracy either by direct or circumstantial evidence of an agreement among defendants; (2) the conspiracy claim against GCCC is redundant and should be dismissed because plaintiff named GCCC Trustees as defendants; (3) the individual defendants are entitled to qualified immunity because the law is not clearly established in this district; and (4) plaintiff's official capacity claims against the individual defendants are redundant.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9, 26–32.  The Court considers each argument in turn.

### A.    Section 1983 Allegations

To succeed on a conspiracy claim under Section 1983, plaintiff must allege (1) specific facts that show an agreement and concerted action among defendants and (2) an actual deprivation of a constitutional right.  Maier v. Kansas, No. 16-3219-SAC, 2017 WL 552629, at *3 (D. Kan. Feb. 10, 2017).  Plaintiff must allege facts that manifest a "specific goal to violate [plaintiff's] constitutional rights by engaging in a particular course of action."  Bledsoe v. Jefferson Cnty., 275 F. Supp. 3d 1240, 1252 (D. Kan. 2017).  Because direct evidence of an agreement to join a conspiracy is rare, the Court can infer assent "from acts furthering the conspiracy's purpose."  Id. The Court decides on a case-by-case basis whether plaintiff has alleged sufficient facts to support a conspiracy claim.  Id.

Defendants argue that plaintiff's allegations "are nothing more than a collated package of conclusory allegations with no basis in fact" and that plaintiff identifies no facts that GCCC, the Trustees or Coach Knapp were involved in any conspiracy.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 28–29.  Defendants also argue that plaintiff does not identify any specific dates, conversations, contacts or other details which would tend to show an agreement or concerted action among the defendants, in particular GCCC, the Trustees and Coach Knapp.  Id. at 28.

The Court disagrees.  In the context of a motion to dismiss, plaintiff must put defendants on notice of her claims, not plead all of her evidence.  See Fed. R. Civ. P. 8(a); see also Leatherman, 507 U.S. at 168 (requiring complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief").  Assuming as true plaintiff's well-pleaded factual allegations, plaintiff sufficiently pleads facts which create an inference that (1) in the spring of 2018, when Douglass started to publicly support Title IX victims and bring attention to Title IX allegations, President Swender, Chief Dozier and other employees at GCCC had a meeting of the minds to orchestrate the issuance of the Notice on April 25, 2018; (2) GCCC employees and the Trustees endorsed their behavior by refusing to revoke the Notice and instead enforcing it and publicly shaming her at Board meetings; and (3) plaintiff's First Amendment rights of speech, association and petition were violated as they intimidated, harassed and silenced her for reporting Title IX concerns.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 384–420.  The Court overrules defendants' motion to dismiss plaintiff's Section 1983 conspiracy claims.

B.      GCCC's Liability Under <u>Monell</u>

Plaintiff alleges that under <u>Monell</u>, GCCC is liable for constitutional violations by GCCC employees under GCCC custom or policy.  <u>First Amended Complaint</u> (Doc. #34), ¶¶ 384–420; <u>Monell</u>, 436 U.S. at 694.  Local governments or municipalities, including GCCC, can be held liable for their employee actions if they were taken pursuant to the "official policy" of GCCC.  <u>Pembaur</u>, 475 U.S. at 479; <u>Monell</u>, 436 U.S. at 694.  To allege liability under <u>Monell</u> and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged.  See <u>Monell</u>, 436 U.S. at 694; <u>Hinton</u>, 997 F.2d at 782.

Defendants argue that because plaintiff named the Trustees as defendants, plaintiff's claim against GCCC is redundant as GCCC is a municipality that can only act through its employees, officers and trustee members.  <u>Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint</u> (Doc. #49) at 29–30.  Defendants do not cite any case law to support this assertion.  Defendants further argue that plaintiff "pleads no facts indicating how the entity GCCC was involved in the conspiracy" and that plaintiff cannot hold GCCC liable under <u>Monell</u> because the underlying employees committed no constitutional violations.  <u>Id.</u>

As stated above, plaintiff sufficiently alleges that GCCC employees—including President Swender, the Trustees, Chief Dozier and Coach Knapp—violated plaintiff's constitutional rights when they conspired to deter her from reporting and testifying about Title IX issues by orchestrating the issuance of the Notice and publicly blaming her for GCCC's financial woes.  <u>See, e.g.</u>, <u>First Amended Complaint</u> (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 384–420.  Further, plaintiff alleges that these conspiratorial actions were based on GCCC Title IX policy or custom to act in concert to intentionally scuttle any Title IX complaints, silence and intimidate critics and

inadequately enforce Title IX.  Id.  Because plaintiff has alleged that the conspiratorial conduct of GCCC employees was taken pursuant to GCCC Title IX policy, it may be subject to municipal liability if the underlying conduct violated the Constitution.  The Section 1983 claim against GCCC therefore survives under Monell.

      **C.**    **Qualified Immunity**

      In the alternative, defendants argue that President Swender, Chief Dozier, Coach Knapp and Trustees Crist, Douglass, Martinez, Wasinger and Worf are entitled to qualified immunity on plaintiff's Section 1983 conspiracy claim because (1) plaintiff has not pled a constitutional claim against the individual defendants and (2) no case law "would have put [defendants] on notice it was 'beyond debate' that their actions violated the [C]onstitution."  Reply To Response To Motion By Defendants (Doc. #87) at 16–17.  To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right.  N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.

      For the first factor, as discussed above, plaintiff has sufficiently pled that (1) she was engaged in protected First Amendment activities when she reported the Title IX violations and publicly supported Title IX victims and (2) President Swender, Chief Dozier, the Trustees and other GCCC employees conspired together to orchestrate the issuance of the Notice, publicly blame her for GCCC's financial woes and deter her from reporting or testifying about her Title IX concerns.  See, e.g., First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 384–420.

For the second factor, the law in the Tenth Circuit is clearly established that retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983.  See Worrell, 219 F.3d at 1212; see also Nave, 2018 WL 6419296, at *9.  In particular, plaintiff alleges that after she reported the Title IX concerns to the Board and publicly supported Title IX victims, GCCC employees issued the Notice banning her from involvement with anyone on campus or at campus events; ignored her reports of sexual harassment at GCCC and told her to "move on"; and publicly blamed her for GCCC's financial woes.  First Amended Complaint (Doc. #34), ¶¶ 31, 66–73, 80–83, 118, 123–59, 384–420.  Additionally, the First Amendment establishes the right to testify truthfully at trial, especially where plaintiff has brought forth matters of public concern like a Title IX allegation.  See, e.g., Patrick v. Miller, 953 F.2d 1240, 1247–48 (10th Cir. 1992); Melton v. City of Okla. City, 879 F.2d 706, 714 (10th Cir. 1989).  A reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiff's First Amendment rights.  See, e.g., Worrell, 219 F.3d at 1212.  Defendants are not entitled to qualified immunity, and defendants' motion to dismiss the Section 1983 conspiracy claim is overruled.

### D.    Official Capacity Claims

Plaintiff asserts the Section 1983 conspiracy claim against President Swender, Chief Dozier, Coach Knapp and the Trustees (Crist, Douglass, Martinez, Wasinger and Worf) in their individual and official capacities.  As with plaintiff's First Amendment retaliation and Due Process claims, defendants argue that the official capacity claims are redundant in view of the claim against GCCC.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 9.  Plaintiff again contends that the official capacity claims are not redundant under Youren.  Memorandum In Opposition By Plaintiff Antonia Douglass (Doc. #73) at 53–54.  Following the

same analysis as discussed above, plaintiff's official capacity claims against Swender, Dozier, Knapp, Douglass, Wasinger, Crist, Martinez and Worf are duplicative because plaintiff brings her Section 1983 conspiracy claim against both GCCC and the individual defendants in their official capacities.  The Court therefore dismisses the official capacity claims against these defendants.

## V.      Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1985(2)

Plaintiff alleges that in violation of 42 U.S.C. § 1985(2), Trustees Wasinger and Douglass conspired to speak at Board meetings on June 9 and June 25, 2020.  Plaintiff alleges that at these meetings, Wasinger and Douglass "inferred that anyone who brings civil rights claims or testifies in support of such claims were damaging the College, the students and destroying faculty and staff jobs because those were the consequences of the insurance rate hikes wrought upon the College due directly to the civil rights claims."  First Amended Complaint (Doc. #34), ¶ 371.  By sharing these comments with a wide audience, Wasinger and Douglass injured plaintiff's reputation, intimidated her from truthfully testifying and intimidated witnesses from associating with or testifying for plaintiff.  Id., ¶¶ 373–76.  Defendants argue that based on the publicly available videos of Board meetings, Wasinger and Douglass did not appear to conspire and their comments cannot be considered force, intimidation or threat.  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 34–35.  In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity.  Id. at 37.  The Court considers each argument in turn.

### A.      Section 1985(2) Allegations

The first clause of Section 1985(2) contains a deterrence provision, which "concerns intimidating parties, witnesses, or jurors in court so that they will not attend court or testify."  King v. Knoll, 399 F. Supp. 2d 1169, 1179 n.57 (D. Kan. 2005).  The "deterrence" provision of

42 U.S.C. § 1985(2) provides that "[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." See 42 U.S.C. § 1985(2). The elements of a deterrence claim under Section 1985(2) are (1) a conspiracy, (2) intent to deter testimony by force or intimidation and (3) injury to plaintiff. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994).

Defendants challenge plaintiff's allegations regarding the first two elements: (1) conspiracy and (2) intent to deter testimony by force or intimidation. A conspiracy "requires the combination of two or more persons acting in concert." Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990). A plaintiff must allege, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." Id. at 1231. The conspiracy "must be one that has the requisite statutory purpose," namely to deter a party or witness from attending or testifying freely, fully and truthfully. Brown v. Chaffee, 612 F.2d 497, 502 (10th Cir. 1979). While more than mere conclusory allegations are required to state a valid claim, "the nature of conspiracies often makes it impossible to provide details at the pleading stage and . . . the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint." Brever, 40 F.3d at 1126.

To satisfy the conspiracy element, plaintiff identifies Wasinger and Douglass and claims that they engaged "in exchanges that appear[ed] preplanned or with prepared notes" that disparaged lawsuits like plaintiff's. First Amended Complaint (Doc. #34), ¶ 370. To satisfy the deterrence element, plaintiff alleges that Wasinger and Douglass linked GCCC's increasing

insurance costs and significant reductions in GCCC faculty, staff and student offerings to lawsuits like plaintiff's. Plaintiff claims that by intimidation and threat, their actions deterred plaintiff from attending or testifying freely, fully and truthfully in federal court because their comments (1) implied that people involved in lawsuits like plaintiff were "bad people" and "essentially pariahs in the Garden City community;" (2) intimidated witnesses from associating with or testifying for plaintiff; and (3) threatened and harmed plaintiff's reputation in the community. Id., ¶¶ 371–76.

Defendants argue that the publicly available videos of Board meetings prove that Wasinger and Douglass (1) did not have a meeting of the minds because Douglass stated in the video that she was sharing her "personal feelings" and (2) did not make comments that could be considered "force, intimidation, or threat" under Section 1985(2) and instead only made vague comments about the economic impact of lawsuits on GCCC. Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 34–35. As stated, the Court cannot consider such extrinsic evidence on a motion to dismiss. See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp., 130 F.3d at 1384. The Court also assumes the truth of plaintiff's allegations regarding the Board meetings. Assuming as true plaintiff's well-pleaded factual allegations, plaintiff sufficiently pleads facts which create an inference that Wasinger and Douglass (1) had a meeting of the minds as demonstrated by their prepared notes and (2) intended to deter plaintiff from testifying about the Title IX allegations by bringing up plaintiff's lawsuit to stigmatize and discredit her. First Amended Complaint (Doc. #34), ¶¶ 370–76. The Court overrules defendants' motion to dismiss plaintiff's Section 1985(2) conspiracy claims.

**B.      Qualified Immunity**

In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity on plaintiff's Section 1985(2) conspiracy claim because defendants "are unaware of any caselaw indicating that comments about the economic impact of a lawsuit will invoke liability under § 1985(2)."  Memorandum In Support Of Motion To Dismiss Antonia Douglass's Complaint (Doc. #49) at 37.  To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right.  N.E.L., 740 F. App'x at 928.  A right is clearly established when every reasonable official would understand that what he or she is doing violates that right.  Id. at 928–29.

For the first factor, defendants argue that based on the publicly available Board meetings videos, Wasinger and Douglass' comments about insurance premiums and the economic costs of litigation "are a far cry from abusive and threatening comments" and "were neither abusive nor threatening as a matter of law."  Reply To Response To Motion By Defendants (Doc. #87) at 18–19.  As discussed above, the Court disregards such extrinsic evidence and accepts plaintiff's allegations that in violation of 42 U.S.C. § 1985(2), Wasinger and Douglass conspired to speak at two Board meetings in June of 2020 to intimidate plaintiff and deter her from testifying about the Title IX allegations and supporting Title IX victims.  First Amended Complaint (Doc. #34), ¶¶ 370–76.

For the second factor, defendants do not dispute plaintiff's argument that the law clearly establishes the right to testify truthfully at trial—they instead (again) argue that the publicly available Board meetings videos prove that "no reasonable [Board] member would have thought that the specific comments made by Wasinger and Douglass [about the economic impact of

lawsuits] were unlawful," i.e., threatening and intimidating under Section 1985(2).  Reply To Response To Motion By Defendants (Doc. #87) at 19.

The First Amendment clearly establishes the right to testify truthfully at trial, especially where plaintiff has brought forth matters of public concern like a Title IX allegation.  See, e.g., Patrick, 953 F.2d at 1247–48; Melton, 879 F.2d at 714.  As discussed, the Court will not consider the Board meetings videos in this motion to dismiss, and plaintiff pleads sufficient facts to give rise to the inference that Wasinger and Douglass conspired to deter her from testifying by threatening and intimidating her at the public meetings, which harmed her reputation in the community and deterred individuals from supporting her efforts.  First Amended Complaint (Doc. #34), ¶¶ 370–76.  Wasinger and Douglass are not entitled to qualified immunity, and defendants' motion to dismiss the Section 1985(2) conspiracy claim is overruled.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss Antonia Douglass's Complaint By Defendants Jeff Crist, Merilyn Douglass, Rodney Dozier, Garden City Community College, Brice Knapp, Steve Martinez, Herbert J. Swender, Blake Wasinger, Teri Worf (Doc. #48) filed October 15, 2020 is **SUSTAINED in part**.  The Court dismisses as redundant plaintiff's First Amendment retaliation, procedural due process and Section 1983 conspiracy claims against President Herbert Swender, Chief Rodney Dozier, Coach Brice Knapp and Trustees Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez and Teri Wolf in their official capacities.  Defendants' motion is otherwise **OVERRULED**.

Dated this 9th day of June, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge