IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTONIA DOUGLASS and ELIZABETH EVERETT, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| GARDEN CITY COMMUNITY COLLEGE, et al., | ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION

No. 20-2076-KHV

## MEMORANDUM AND ORDER

Elizabeth Everett filed suit against Garden City Community College ("GCCC"), Herbert J. Swender, Rodney Dozier, Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez, Teri Worf, Brice Knapp, Freddie Strawder and the City of Garden City, Kansas through its police department. Plaintiff alleges retaliation under Title IX, 20 U.S.C. § 1681 et seq., and violations of federal civil rights under the First, Fourth, Fifth and Fourteenth Amendments, U.S. Const. amends. I, IV, V and XIV, and 42 U.S.C. § 1983. Pretrial Order (Doc. #224) filed September 22, 2022.

This matter is before the Court on the Motion For Summary Judgment (Doc. #212), which Garden City and Strawder filed September 16, 2022. For reasons stated below, the Court sustains defendants' motion.

## Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the

suit under the governing law." Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets the initial burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which she carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry her burden, the nonmoving party may not rest on her pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

## **Factual Background**

The following facts are uncontroverted or viewed in a light most favorable to plaintiff, the nonmoving party.

In 2018, Garden City employed Strawder as a detective. During the academic year from 2017 to 2018, plaintiff attended GCCC and participated on its cheer team. On March 23, 2018, Aaron Kucharik, a community member and member of the GCCC Endowment Society, delivered to Captain Michael Radke of the Garden City Police Department ("GCPD") a package containing a letter from plaintiff. Plaintiff addressed her letter to GCCC and the GCPD. In this letter, plaintiff alleged that (1) she had complained to GCCC about sexual harassment from the GCCC cheer coach, Brice Knapp; (2) she had also complained to GCCC that a fellow cheer student, Henry Arenas, had blackmailed her for sex; and (3) Knapp and other GCCC members were retaliating against her because of her complaints. Exhibit 9 (Doc. #234-8).

On March 26, 2018, Radke assigned Strawder to investigate plaintiff's allegation that Arenas had blackmailed her for sex. Strawder met with plaintiff and her mother to discuss her allegation. During the meeting, plaintiff told Strawder that she did not want to press charges because she trusted that GCCC would handle her complaint.

On May 3, 2018, Strawder met with Holly Chandler and Tammy Hutcheson (GCCC faculty members) to discuss a complaint from another GCCC student. Strawder testified that during this conversation he "probably" complained about plaintiff. Exhibit 11 (Doc. #234-10) at 13. Specifically, Strawder did not believe that he needed to investigate plaintiff's complaint against Arenas because she did not want to press charges.

-3-

On May 9, 2018, Strawder received a phone call or voicemail from Sabrina Gunnip, another GCCC student cheerleader. Gunnip reported that she had recently received a phone call and follow-up text message from plaintiff. The text message stated as follows: "let my name come out of your mouth one more time [and] see what happens." Exhibit 22 (Doc. #234-19) at 2. Strawder arranged to interview Gunnip the next day. During this interview, Strawder told Gunnip that based on the text message of May 9, he did not have probable cause to arrest plaintiff for criminal threat. Strawder then asked Gunnip if she would like to send messages to plaintiff's phone to gather more evidence. Gunnip agreed.

Gunnip and Strawder began texting plaintiff's phone number. They initiated the text conversation by asking: "Who is this anyway?" They then sent a follow-up message: "Don't care to talk?" Exhibit 22 (Doc. #234-19) at 3. During the resulting text conversation, plaintiff used vulgar language and insulted Gunnip. Plaintiff also texted Gunnip the following statements: "pull up I'll be at the college behind the library," "where are you . . . let's settle this," "shut up . . . fight me," "post up," "let's go" and "won't be able to see once I'm done with you." Id. at 4, 6, 11, 12, 13, 15 & 17. When Gunnip (or Strawder on her behalf) asked plaintiff what she would do if Gunnip did not want to fight, plaintiff responded that she would "fight [her] anyways [sic]." Id. at 15.

During the text conversation on May 10, 2018, plaintiff told Gunnip to meet her at the GCCC library at 3:30 p.m. to fight and eventually texted Gunnip that she was on her way and then that she was "here." Id. at 18. At some point during the text conversation, Strawder called Detective Mark Johnson and asked him to wait for plaintiff at the GCCC campus. Strawder told

-4-

Johnson that if plaintiff arrived on campus, he had probable cause to arrest her for criminal threat. Johnson arrested plaintiff in her car outside the GCCC fine arts building at 3:30 p.m. on May 10, 2018. Exhibit 21 (Doc. #234-18) at 28. Strawder prepared an affidavit for the county attorney and court. In this affidavit, Strawder did not indicate that he had texted plaintiff from Gunnip's phone.

Johnson attempted to interview plaintiff at the GCPD station but stopped when she invoked her right to an attorney. GCPD officers then took plaintiff to the county jail. Finney County officers booked plaintiff at the jail, and she remained in a holding cell overnight. While plaintiff was in jail, in the early morning hours of May 11, 2018, officers arrested and booked Arenas. Plaintiff could see Arenas from her cell, and he taunted her about the scandal with Knapp. Plaintiff felt that the GCPD, in concert with GCCC officials, purposely arrested and booked Arenas that day to intimidate her. Even though Garden City dropped the charges against her, plaintiff spent thousands of dollars in attorney's fees and bond money to defend herself against Gunnip's criminal threat allegations.

On February 2, 2022, plaintiff filed this action. Under 42 U.S.C § 1983, plaintiff alleged that Strawder, in his individual capacity, and Garden City, through the GCPD, violated her Fourth and Fourteenth Amendment rights when they falsely arrested and maliciously prosecuted her. Plaintiff further alleged that Strawder conspired with Gunnip, Gunnip's mother, the GCPD and GCCC officials to interfere with her civil rights under Section 1983. Pretrial Order (Doc. #224)

filed September 22, 2022 at 31–34.[1] Defendants assert that they are entitled to summary judgment on each of plaintiff's claims.

## Analysis

Defendants assert that they are entitled to summary judgment on all of plaintiff's claims because plaintiff cannot establish that she suffered a constitutional violation when Johnson arrested her on May 10, 2018.

### I.     False Arrest And Malicious Prosecution Claims

Defendants argue that Strawder had probable cause to initiate plaintiff's arrest for criminal threat. In the alternative, defendants argue that qualified immunity applies because Strawder arguably had probable cause to arrest plaintiff.

To establish a false arrest claim under Section 1983, plaintiff must demonstrate the elements of the common law tort of false arrest. See Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996). To recover for false arrest under Kansas law, plaintiff must show that defendants unlawfully arrested her or they "instigated it, assisted in the arrest, or by some means directed,

---

[1] In her response memorandum, plaintiff argues that she also claims First Amendment retaliation for retaliatory arrest and retaliatory prosecution. The Pretrial Order shows that plaintiff only claimed Fourth and Fourteenth Amendment violations for false arrest and malicious prosecution. Pretrial Order (Doc. #224) filed September 22, 2022 at 31–34. Plaintiff's Section 1983 conspiracy claim, however, mentions First Amendment violations stemming from the false arrest and malicious prosecution. Id. at 35. Nevertheless, First Amendment retaliatory arrest and retaliatory prosecution claims fail when probable cause supported the arrest. See Nieves v. Bartlett, 139 S. Ct. 1715, 1725 (2019) (plaintiff must show absence of probable cause for retaliatory arrest claims); Hartman v. Moore, 547 U.S. 250, 265–66 (2006) (probable cause requirement for retaliatory prosecution claims). As explained below, plaintiff cannot establish that Strawder lacked probable cause to arrest her for criminal threat on May 10, 2018. Because probable cause supported the arrest, any First Amendment retaliation claim against Strawder and Garden City fails for the reasons articulated below.

countenanced or encouraged it." Thompson v. General Finance Co., Inc., 468 P. 2d 269, 280 (Kan. 1970) (citing Hammargren v. Montgomery Ward & Co., 241 P.2d 1192 (Kan. 1952)).  To maintain a malicious prosecution claim under Section 1983, plaintiff must show that (1) defendants caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the original arrest, continued confinement or prosecution; (4) defendants acted with malice and (5) plaintiff sustained damages.  See Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018) (citing Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008)).  For both false arrest and malicious prosecution claims under Section 1983, plaintiff establishes a constitutional violation by showing a lack of probable cause.  See Puller v. Baca, 781 F.3d 1190, 1196–97 (10th Cir. 2015); Koch v. City of Del City, 660 F.3d 1228, 1241–42 (10th Cir. 2011).

Defendants argue that Strawder had probable cause to arrest plaintiff for criminal threat. A police officer may make a warrantless arrest if the officer has probable cause to believe that the person has committed or is committing a crime.  Berry v. City of Phillipsburg, Kan., 796 F. Supp. 1400, 1405 (D. Kan. 1992).  "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  Id. (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)).  This determination must be made "in light of circumstances and facts as they would have appeared to a prudent, cautious, trained police officer."  Maher, 919 F.2d at 1485–86.

The Tenth Circuit has recognized that in civil rights cases such as this one, probable cause

to arrest is ordinarily a question of fact for the jury:

> It is true that the issue of probable cause ordinarily is for the judge rather than the jury.  That is because the issue usually arises in the context of a motion to suppress evidence, which the judge decides.  But where the issue arises in a damage suit, it is . . . a proper issue for the jury if there is room for a difference of opinion.  The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence— a classic jury issue.

DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir. 1990); see also Marland v. Heyse, 315 F.2d 312, 314 (10th Cir. 1963); Stringer v. Dilger, 313 F.2d 536, 541 (10th Cir. 1963).

Under Kansas law, a criminal threat is "any threat to . . . commit violence communicated with the intent to place another in fear." K.S.A. § 21-5415(a)(1).  Kansas courts have held that the threat of violence need not be communicated directly to the victim and that a conditional threat can qualify under the statute.  See State v. Hunt, No. 112,823, 2015 WL 4366555, at *3 (Kan. Ct. App. June 26, 2015) (defendant communicated threat to police officer regarding different individual).

Strawder testified that he approved plaintiff's arrest because (1) plaintiff texted Gunnip on May 9, 2018 "[l]et my name come out of your mouth one more time [and] see what happens," (2) Gunnip contacted Strawder and indicated that she feared for her safety, (3) in response to text messages from Gunnip (or Strawder on her behalf)[2] on May 10, 2018, plaintiff texted Gunnip as

---

[2] Plaintiff argues that Strawder's pretextual text messaging on May 10, 2018 vitiates probable cause.  Plaintiff, however, provides no on point caselaw to support this conclusion. Plaintiff also does not respond to defendant's argument that Strawder may send pretextual messages to collect evidence and does not even need reasonable suspicion to do so.  See e.g., United Stated v. Gamble, 737 F. 2d 853, 860 (10th Cir. 1984) ("the government need not have a reasonable suspicion of wrongdoing in order to conduct an undercover investigation of a particular
(continued . . .)

follows: "pull up I'll be at the college behind the library," "where are you . . . let's settle this," "shut up . . . fight me," "post up," "let's go" and "won't be able to see once I'm done with you," (4) when Gunnip (or Strawder on her behalf) asked plaintiff what she would do if Gunnip did not want to fight, plaintiff responded that she would "fight [her] anyways [sic]," (5) plaintiff told Gunnip to meet her at the GCCC library at 3:30 p.m. to fight and texted "here" indicating that she was at the library and (6) Johnson arrested plaintiff when she arrived on campus at 3:30 p.m.[3] Plaintiff has offered no evidence which contradicts Strawder's testimony on this issue. Therefore, the Court sustains defendant's motion for summary judgment on plaintiff's Fourth and Fourteenth Amendment claims based on her arrest on May 10, 2018.[4]

---

person"); Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1146 (10th Cir. 2014) (government agents may use deception to detect crime). The Court therefore finds that Strawder's participation in the pretextual text messaging is not dispositive.

[3]  Plaintiff argues that Strawder could not have had probable cause because she arrived at the fine arts building rather than the library. The Court takes judicial notice that the fine arts building is adjacent to the library on the GCCC campus and therefore does not find plaintiff's distinction mattered. See Campus Map, https://www.gcccks.edu/about_gccc/campus_map.aspx (last visited Dec. 6, 2022).

[4]  In the alternative, a reasonable officer could have believed that probable cause existed to arrest plaintiff. In the context of a warrantless arrest, Strawder is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995); see Hunter v. Bryant, 502 U.S. 224, 228 (1991) (arresting officers entitled to qualified immunity if at moment arrest made, facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant prudent man in believing that individual had violated law); Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1515 (10th Cir. 1995). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Romero, 45 F.3d at 1476 (quotations omitted). Based on Strawder's review of plaintiff's text on May 9, 2018, plaintiff's texts the following day and plaintiff driving near the library at 3:30 p.m., a reasonable officer could have believed that he had probable cause to arrest plaintiff for criminal threat.

## II.     Claims Against City

Plaintiff claims that Garden City through the GCDP acted with deliberate indifference in failing to establish a program of effective training, supervision and discipline and therefore permitted Strawder to violate her Fourth and Fourteenth Amendment rights.  Defendant argues that it is entitled to summary judgment on plaintiff's claim because plaintiff did not establish a constitutional violation.  The Court agrees.  To succeed on her Section 1983 claim against Garden City, plaintiff must show that the GCPD caused a constitutional violation through an official policy or custom which was the direct cause or moving force behind the constitutional violation.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 480–85 (1986).  Because plaintiff has not shown a constitutional violation, the Court sustains defendant's motion for summary judgment on this claim.

## III.    Section 1983 Conspiracy Claim

Under Count XII, plaintiff asserts conspiracy, alleging that Strawder, Gunnip, Gunnip's mother, GCCC, GCPD and other GCCC members acted in concert "to deter [plaintiff] from speaking and exercising her First Amendment rights to free speech and association . . . about Title IX issues on the GCCC campus by aiding and abetting the orchestration by Strawder of her false arrest and malicious prosecution."  Pretrial Order (Doc. #224) filed September 22, 2022 at 35. Defendants argue that plaintiff's claim fails because she cannot show that she endured an actual deprivation of a constitutional right.

To succeed on a conspiracy claim under Section 1983, plaintiff must show (1) an actual deprivation of a constitutional right, (2) a combination of two or more persons acting in concert

-10-

and (3) a meeting of the minds, an agreement among defendants or a general conspiratorial objective.  Brooks v. Gaenzle, 614 F.3d 1213, 1227–28 (10th Cir. 2010).  For reasons stated above, plaintiff has not shown that she suffered an actual deprivation of a constitutional right when Johnson arrested her for criminal threat.  The Court therefore sustains defendants' motion for summary judgment on this claim.

**IT IS THEREFORE ORDERED** that the Motion For Summary Judgment (Doc. #212) which Garden City and Freddie Strawder filed September 16, 2022, against Elizabeth Everett is **SUSTAINED**.

Dated this 9th day of December, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge